217 N.J. Super. 424 (1987)
526 A.2d 230
LOUIS POLIDORI AND POLIDORI CONSTRUCTION CO., PLAINTIFFS-APPELLANTS,
v.
KORDYS, PUZIO & DI TOMASSO, AIA, AND SUPERIOR MILLWORK CO., INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1987.
Decided May 5, 1987.
*426 Before Judges BRODY and LONG.
Terrence Dwyer argued the cause for appellants (Williams, Caliri, Miller & Otley, attorneys; Terrence Dwyer, of counsel; Brian N. Lokker, on the brief).
William J. Pollinger, P.A., argued the cause for respondent, Superior Millwork.
Thomas A. Kowalczyk argued the cause for respondent Kordys, Puzio & Di Tomasso (Kimmelman, Wolff & Samson, attorneys).
The opinion of this court was delivered by LONG, J.A.D.
On this appeal plaintiffs, Louis Polidori and Polidori Construction Co., challenge the trial judge's grant of summary judgment dismissing the complaint they filed against defendants, Kordys, Puzio and Di Tomasso, AIA (Kordys) and Superior Millwork Co., Inc. (Superior). We affirm in part and reverse in part.
The case arose as follows: In 1979 Louis Polidori purchased a parcel of real estate on 11 Whitaker Avenue, West Paterson, New Jersey. Soon after the purchase, Polidori erected a two-family house on the land. Polidori, as the sole shareholder of *427 Polidori Construction Company, acted as the general contractor and performed the carpentry and general construction work. Architects Kordys, Puzio & Di Tomasso, AIA designed the house including the stairs running between the basement and the first floor. The stairs were built by Superior Millwork Co., Inc. Polidori subcontracted with Anthony Gaetano to install the plumbing.
During the construction, Polidori stated that he questioned the plumber about the way he installed a piece of copper piping. Polidori noted that the piping had been installed along an exterior wall without any insulation between the piping and the exterior face of the wall and that this method of installation could result in the pipe freezing and bursting. He testified that after questioning Gaetano about this method of installation, Gaetano stated "[t]hat the way it was installed was regular practice, it was done like that many, many times and he felt there was nothing wrong."
After the construction on the house was completed, Polidori leased the second floor apartment to Mr. and Mrs. Ferrazzano and their daughter. As part of the lease agreement, the Ferrazzanos were permitted to use the laundry facilities in the basement. Access to the basement was through the first floor apartment and down the stairs.
On December 28, 1980, Mrs. Ferrazzano heard the sound of running water. She summoned her husband and together they went to the first floor to investigate. After determining that the noise was coming from below they went down into the basement and found water on the floor. Mr. Ferrazzano opened the door to the basement bathroom and "water came gushing out." When Mr. Ferrazzano could not locate a shutoff, Mrs. Ferrazzano started up the basement stairs to call Polidori. As she climbed the stairs with wet slippers she lost her footing, fell and sustained injuries.
On July 9, 1982, the Ferrazzanos filed a complaint for damages against Polidori, Gaetano and others for injuries suffered *428 as a result of the fall. In May of 1984, Polidori filed a motion to join Superior and Kordys as third-party defendants. The Ferrazzanos filed a cross motion to amend their complaint to make these parties direct defendants. On May 23, 1984, these motions were denied.
Thereafter, the Ferrazzanos filed a separate action for damages against Superior and Kordys. The two actions were consolidated. The Ferrazzanos' claims against Superior and Kordys were subsequently dismissed on the ground that they were barred by the statute of limitations. The original action brought by the Ferrazzanos against Polidori was settled for $80,000 on April 16, 1984. Polidori and the Ferrazzanos entered into a Stipulation of Dismissal[1] and the Ferrazzanos' executed a release in favor of Polidori.
On July 10, 1985, Polidori filed a complaint against Kordys and Superior claiming negligence (count one); breach of contract and of express and implied warranties (count two); strict liability (count three); common law idemnification (count four), and statutory contribution (count five). Superior and Kordys filed motions for summary judgment seeking the dismissal of the complaint alleging that Polidori's claims for contribution and indemnification were based on the damages he paid to the Ferrazzanos in the original lawsuit. These motions were granted. With respect to contribution and indemnification, the trial judge ruled that Polidori failed to meet the "judgment" requirement of N.J.S.A. 2A:53A-3 thereby precluding contribution, and that Polidori was at least partly at fault for the accident to Mrs. Ferrazzano thus barring common law indemnification. He dismissed Polidori's remaining claims because
[a]ny causes of action plaintiff might have against these defendants arose from the loss plaintiff sustained by paying compensation to the Ferrazzanos. Until that time, plaintiff did not sustain any loss. Since plaintiff's damages arose out *429 of his resolution of the lawsuit brought by the Ferrazzanos, his only possible causes of action necessarily must be based on principles of contribution or indemnification. As indicated, neither of those theories is sustainable under the factual constellation appearing here.
Polidori's motion for reconsideration was denied and he thereafter filed this appeal.
We turn first to Polidori's claim of entitlement to contributionunder N.J.S.A. 2A:53A-1 et seq. At common law, if an injured plaintiff released one defendant from liability in any amount, that party was barred from recovering from any of the other defendants. This rule was noted in Tino v. Stout, 49 N.J. 289 (1967):
At early common law, a plaintiff could obtain but one judgment on a joint tort. Because the act of one joint tortfeasor was the act of all, it was considered that there was one cause of action which was merged in the judgment. Thus, a judgment against one defendant, even though that defendant be insolvent and even though that judgment went unsatisfied, barred all actions. [at 296, n. 2 (citations omitted)]
To alleviate the inequities of this rule, New Jersey enacted the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 et seq., which provides that one may seek contribution from another joint tortfeasor
[w]here injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought. [N.J.S.A. 2A:53A-3 (emphasis added)]
The allowance of contribution is founded upon principles of equity to insure a fair and just division of losses between responsible tortfeasors. See Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 386 (1954) (The right to receive contribution "arises out of a payment in excess of the payor's just share of the common obligation ensuing from a common wrongful act, neglect or default ..."). This right is only enforceable after the tortfeasor seeking it has been legally *430 compelled to pay more than his equitable share of the liability. Until this point, the right remains inchoate. Thus, the statute did not purport to increase the liability of any of the joint tortfeasors but rather redressed the inequity which frequently arose when the injured person only sued one of the tortfeasors. In such instances, it allowed the settling tortfeasor to pursue the other responsible tortfeasors to the extent of their pro rata share of liability.
What is at issue here is not the overall meaning of the Joint Tortfeasors Contribution Act. The parties agree that the intention of the Act was to remedy the common law limitation on contribution. Where they part company is over the meaning of the language "recovers a money judgment or judgments." More particularly, the issue is whether a legal obligation evidenced by a settlement coupled with a Stipulation of Dismissal meets the requisites of N.J.S.A. 2A:53A-3 or whether an actual judgment, blessed with the imprimatur of the court, is required.
N.J.S.A. 2A:53A-3 is derived from the Uniform Contribution Among Tortfeasors Act which provides:
(a) Except as otherwise provided in this Act, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. [Uniform Contribution Among Tortfeasors Act § 2, 12 U.L.A. 68 (1955)]
The obvious difference between the uniform act and the New Jersey statute was addressed in a scholarly article written contemporaneously with the New Jersey statute's enactment:
Section 2(2) of the Uniform Law provides that the right to a money judgment contribution does not arise until one tort-feasor by payment has discharged the common liability or has paid more than his pro rata share thereof. Section 2(3) of the Uniform Act provides that a joint tortfeasor who settles with the injured party is not entitled to recover contribution from another joint tortfeasor whose liability is not extinguished by the settlement. The New Jersey law in N.J.S.A. 2A:53A:3 is parallel to, but narrower than, Section 2(2) of the Uniform Act, since the New Jersey Act conditions the right to contribution upon the payment in whole or in part of a judgment obtained by the injured party, and not merely upon the discharge of a common liability. However, the New Jersey Law completely omits Section 2(3) of the Uniform Act and, in treating contribution as a right arising upon the payment of a judgment to the injured person, *431 apparently excludes entirely the notion that a tortfeasor settling with the injured party is entitled to contribution. [M.A. Dauber, New Jersey Tortfeasors Contribution Law, 7 Rut.L.Rev. 380, 381 (1952) (emphasis in original)]
Addressing the differences between the New Jersey statute and the Uniform Law, the Supreme Court in dictum in Pennsylvania Greyhound Lines, supra, observed that:
Unlike the draft act submitted by the Commissioners on Uniform State Laws, ... our statute does not provide for contribution where the payment is made in fulfillment of a voluntary compromise or settlement of a claim for damages attributed to a joint tortfeasor. [at 383]
In Young v. Steinberg, 53 N.J. 252 (1969) the Appellate Division (100 N.J. Super. 507 (App.Div. 1968)) held that a consent judgment entered into as the result of a settlement between plaintiff and a tortfeasor, did not satisfy the statutory requirement of the recovery of a money judgment under 2A:53A-3 and thus precluded the settling tortfeasor from seeking contribution from another tortfeasor. The court stated that "[t]he legislative intent would appear to encompass only a judgment entered into in a true adversary proceeding." Young v. Steinberg, supra, 100 N.J. Super. at 513. In a dissenting opinion, Judge Foley opined that there was no valid reason why "the recovery of a money judgment entered by consent ... could not be made the basis [for a claim] for contribution." Id. at 515. (Foley, J.A.D., dissenting).
The Supreme Court reversed the Appellate Division substantially for the reasons set forth in Judge Foley's dissent. Young v. Steinberg, 53 N.J. 252 (1969). It held that "[a] suit for contribution based on a settlement which has been elevated to the status of a judgment by formal court proceeding, and which discharges the injured party's claim against a non-settling joint tortfeasor, comports with the intent of our statutory scheme." Id. at 255. In Young, while the Supreme Court implicitly rejected the requirement of a full blown adversary proceeding in order to invoke the contribution law thus validating the use of the consent judgment as a basis for contribution, it did not retract its statement in Pennsylvania Greyhound that an ordinary settlement would not pass muster.
*432 Polidori contends "that once the interpretation of the Joint Tortfeasors Contribution Act has been expanded to include consent judgments on settlements, as it was in Young v. Steinberg, there is no policy rationale for excluding contribution based on a settlement which has been memorialized in a stipulation of dismissal." Were we called upon to decide this issue in a vacuum, we would agree with Polidori. Clearly, there is little philosophical difference between a settlement coupled with a Stipulation of Dismissal and a settlement in the form of a consent judgment. We are constrained from such a holding here, however, because we are bound to enforce the statute as written. Sheeran v. Nationwide Mutual Ins. Co., Inc., 80 N.J. 548, 566 (1979) ("[T]he meaning of the statute must * * * be sought in the language in which the act is framed, and if that is plain * * * the sole function of the courts is to enforce it according to its terms"). By the terms of this statute, a "judgment" is required in order to trigger the right to contribution. Indeed this is the reason why the Supreme Court in Young, in rejecting the requirement of a full adversary proceeding for joint tortfeasor contribution, still held fast to the requirement that a settlement be "elevated to the status of a judgment by formal court proceeding." Thus it is for the Legislature to address this problem.
Polidori next argues that the trial judge erred in granting summary judgment dismissing the common law indemnification count of the complaint because "there are disputed questions of fact about whether Polidori was negligent; about whether, if he was negligent, his negligence was primary or imputed, and about whether, if he was negligent, his negligence was a proximate cause of Mrs. Ferrazzano's injury." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
It is well-settled that to establish a claim for common law indemnification, Polidori must demonstrate that he was free of fault in the causing of Mrs. Ferrazzano's injury. Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980); *433 See also Adler's Quality Bakery, Inc. v. Gaseteria Inc., 32 N.J. 55 (1960). As noted in Restatement, Restitution, § 96 at 418 (1937):
A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.
In granting summary judgment the trial judge determined as a matter of law that Polidori, as the landlord and general contractor, was at least partially at fault. As a landlord, liability is imputed to Polidori by virtue of his status. Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48 (App.Div. 1973), aff'd 63 N.J. 577 (1973). If that was the sole claim as to his liability, it could be argued that Polidori fell under the "vicarious/imputed" exception to the indemnification rule enunciated in Adlers Bakery, supra, 32 N.J. at 80 (Indemnity among tortfeasors has generally been allowed where the negligence is not morally culpable but is merely constructive, technical, imputed or vicarious). However the claim as to Polidori's responsibility for the accident does not arise solely from his status as a landlord. As general contractor on the construction of his house, Polidori's liability for a pipe which he knew was being installed improperly is primary. Thus, while the "fact issue" which Polidori advances as a reason why summary judgment should have been denied (that the plumber told him the pipe installation was proper) could conceivably insulate him from liability as a landlord, it could not insulate him from liability as a general contractor. Aronsohn v. Mandara, 98 N.J. 92 (1984); Totten v. Gruzen, et al., 52 N.J. 202 (1968). He therefore could not demonstrate the requisite freedom from fault as to the accident and the indemnification count of the complaint was properly dismissed.
We have considerable doubt, however, as to the propriety of the trial judge's dismissal of the counts of the complaint sounding in negligence, breach of contract, breach of warranty and strict liability. As Kordys and Superior concede, the motions for summary judgment were addressed only to the contribution *434 and indemnification issues although they sought dismissal of the entire complaint. They argue that Polidori did not even raise the issue of other "economic losses" in defending the motions. The obvious reason for this is that Polidori never expected that upon motions addressed only to two counts of the complaint, the judge would gratuitously dismiss the other three counts as well. We see no basis in this record for the judge's conclusion that every count of this complaint was for contribution or indemnification. On its face, the complaint can be read to support Polidori's claim for economic losses sustained in connection with the replacement or repair of the stairway and railing, and the difference in the value of the house now and if it had been constructed properly. Whether these claims pale in significance to the contribution and indemnification claims as alleged by Kordys and Superior is irrelevant. The dismissal of Counts one, two and three of the complaint was therefore improper and must be reversed. Polidori is free to prove such economic damages as he can show flowed from the allegations of those counts.
This brings us to the final issue. Polidori claims that among the elements of consequential damages potentially recoverable on his breach of contract count against Kordys and Superior is the $80,000 he paid to the Ferrazzanos for the injuries they sustained as a result of the defectively constructed stairs. We agree with Polidori. In a contract action, a party may ordinarily expect to recover damages for losses naturally ensuing from a breach:
All that is necessary, in order to charge the defendant with a particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach. [5 Corbin, Contracts § 1019 at 79 (1964)]
There is no limit on the kinds of losses for which damages may be had in a contract action. Thus, personal injury damages may be recoverable in a contract action if they were reasonably foreseeable. Coyle v. Englander's, 199 N.J. Super. 212 (App. *435 Div. 1985); Strong v. Commercial Carpet, Inc., 163 Ind. App. 145, 324 N.E.2d 834 (Ct.App. 1975); Williston, Contracts § 1394 at 475 (3 ed. 1968). The only limitation on recovery is the rule of Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854) that the defendant is not chargeable for remote losses, "that he did not have reason to foresee as a probable result of the breach when the contract was made." Donovan v. Bachstadt, 91 N.J. 434 (1982). This is a jury question. Clearly, the payment by Polidori to the Ferrazzanos for Mrs. Ferrazzano's injury on the stairs was not such a remote consequence of the breach of the construction contract as to offend Hadley v. Baxendale as a matter of law. At the inception of this contract, both Polidori and Kordys knew the purpose of the stairs, understood that if the stairs were defective injury to persons using them was likely to ensue and that Polidori, as the owner of the house, might well be required to answer in damages for such injury. Thus, it is within the province of the jury to determine whether the payment to the Ferrazzanos can be said to have been a consequence which "a prudent man would have realized to be a probable result of his breach." Coyle, supra, 199 N.J. Super. at 220 quoting 5 Corbin, Contracts § 1012 at 88 (1964). It follows that the payment by Polidori to the Ferrazzanos falls within the category of consequential damages theoretically recoverable on the breach of contract claim.
Kordys and Superior argue that such an approach would undermine the policies behind N.J.S.A. 2A:53A-3 by allowing Polidori to recover that which the contribution statute prohibits and to do indirectly that which could not be done directly. This argument has facial appeal but cannot withstand close analysis because the damages here are claimed to flow as a consequence of a breach of the contractual relationship between Polidori, Kordys and Superior. This is an entirely separate and distinct cause of action from the contribution and indemnification counts of the complaint. What Kordys and Superior are arguing, in effect, is that because Polidori is precluded from recovery on one theory, he must be barred from recovery on all *436 others. This is obviously incorrect. It is simply of no consequence that an award on the contract count of the complaint would have the effect of giving Polidori the recovery he could not obtain on the contribution and indemnification counts. This is a common result where a complaint alleges more than one theory of recovery.
This is not to say that the $80,000 will be recovered at the trial. In this opinion, we have merely rejected the claim of Kordys and Superior that there is a legal impediment to the recovery of Polidori's payment to the Ferrazzanos as an element of consequential damages on the contract counts of the complaint. It will be for the jury to determine whether that payment or a portion of it was, in fact, the result of a breach of contractual duty owed to Polidori by Kordys and Superior and to assess damages based upon that finding.
Affirmed in part; reversed and remanded for the entry of an order reinstating counts one, two and three of the complaint.
NOTES
[1] Although the record is not clear on this point, the Stipulation of Dismissal apparently disposed of the Ferrazzanos' entire complaint with respect to all defendants, including Gaetano.