249 N.J. Super. 11 (1991)
592 A.2d 1
BERNARD LAWLER AND EMMA LAWLER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
MELAID ISAAC, M.D., AND JAMES SULLIVAN, M.D., DEFENDANTS-RESPONDENTS, AND JERALD NATHAN FRIEDMAN, M.D., C.A. RAVANZO, M.D., AND WARREN HOSPITAL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1990.
Decided June 5, 1991.
*12 Before Judges PRESSLER, BAIME and A.M. STEIN.
Eric J. Ludwig argued the cause for appellants (Stark & Stark, P.C., attorneys; Eric J. Ludwig, of counsel and on the brief and reply brief; Susan Jacobucci on the brief and reply brief).
L. Blakeley Johnstone, III, argued the cause for respondent Isaac (Johnstone, Skok, Loughlin & Lane, P.C., attorneys; L. *13 Blakeley Johnstone, of counsel; Michael J. Schoppmann on the brief).
Roger G. Ellis argued the cause for respondent Sullivan (Bumgardner, Hardin & Ellis, attorneys; Roger G. Ellis, of counsel; M. Christie Wise on the brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
We granted leave to appeal in this medical malpractice action from the Law Division's order denying plaintiffs' motion to vacate the voluntary stipulations of dismissal without prejudice executed by their former lawyer and to reinstate the complaint against defendants Isaac and Sullivan. We reverse and order the complaints to be reinstated against these two physicians. The motion judge incorrectly considered the reinstatement motion under the more stringent standards set forth in R. 4:50, dealing with review from final judgment, rather than the less restrictive "interest of justice" standards set forth in R. 4:42-2.
Plaintiff Bernard Lawler is now seventy-six years old. In early 1985 he visited his family physician complaining of bowel problems. The physician referred him to Isaac, a gastroenterologist, who performed a colonoscopy on plaintiff on July 23, 1985 at Warren Hospital. Isaac identified a polyp beyond the length of the sixty-seven-inch-long colonoscope. He concluded that the polyp was located on the right proximal transverse colon. Isaac then inserted a biopsy forceps through the scope and removed samples of the polyp. He then ordered a barium enema for plaintiff, which was performed at Warren Hospital on July 26, 1985. The barium enema results were interpreted by Sullivan, the radiologist, who indicated that a polyp was located in the right proximal transverse colon. Unfortunately, the hospital's radiological technician transposed the right and left sides of the X ray. The polyp was actually in the left descending colon.
*14 On August 1, 1985, defendant Friedman and his assistant surgeon, defendant Ravanzo, operated on plaintiff. Friedman performed left and right colotomies on plaintiff, passing a sigmoidoscope down to the cecum and across the splenic flexure. He could not locate a polyp. While he was in the operating room, Friedman contacted Sullivan and Isaac to confirm the existence of the polyp. He also conversed with other doctors in the hospital. Sullivan confirmed his earlier conclusion as to the polyp's location as shown on the X ray. Isaac reaffirmed his opinion that the polyp was in the proximal transverse colon. Friedman performed a right hemicolectomy, removing approximately fifteen and three-quarter inches of plaintiff's right colon. The pathology report indicated that this section of plaintiff's colon did not have a polyp.
On August 16, 1985, Friedman again operated on plaintiff, this time performing a bowel resection. Plaintiff continued to complain of bowel problems following this surgery. He consulted Dr. D'Agostino, a gastroenterologist, who performed a colonoscopy and properly identified a mass near the splenic flexure (an abrupt turn in the colon near the lower end of the spleen, connecting the descending with the transverse colon). On November 18, 1985 Friedman operated on plaintiff for the third time, removing approximately twenty-four inches of plaintiff's left colon. A pathology report indicated that the polyp in the left colon was benign.
Plaintiff is incontinent. He often soils his clothing and sheets. He is unable to travel for more than one-half hour at a time and is afraid to eat out because he frequently soils himself. He is required to maintain a strict diet. His brief describes him as a "colon cripple." We do not regard this description as hyperbole.
Plaintiffs' initial complaint, filed on June 25, 1987, named Friedman, Ravanzo, Isaac and Warren Hospital as defendants. Their attorney thereafter received a medical report concluding *15 that all of the named defendants were negligent. The report also states:
There is also the possible suggestion in the medical records that a barium enema was performed ... prior to surgery which improperly identified the area as being in the right transverse colon.
Thereafter, plaintiffs filed an amended complaint on October 14, 1987 joining Sullivan as a defendant.[1]
Despite this report, on June 7, 1988, the associate handling the case for plaintiffs' law firm filed voluntary stipulations without prejudice dismissing Isaac and Sullivan as defendants. On October 28, 1988 he also signed a stipulation of dismissal, this time with prejudice, dismissing Warren Hospital  the employer of the allegedly negligent X-ray technician.
In May 1989 the associate handling plaintiffs' file left the law firm representing plaintiffs and went to work for the attorneys representing Isaac. We were advised at oral argument that he has since left that firm. Plaintiffs' old law firm has now merged with the firm which presently represents him.
On November 21, 1989 plaintiffs' present counsel received a report from a new expert accusing Isaac and Sullivan of malpractice:
Dr. Isaac, the endoscopist, made a grievous error when he determined that the polyp was beyond the 170 cm. mark of the scope, and as a consequence misled Dr. Friedman as to its location. Apparently, Dr. Isaac made no effort to determine the location of his scope by the transillumination on the abdominal wall to identify the end of the scope, nor x-ray confirmation of its position in the colon prior to withdrawing the instrument. Both of these procedures are most important in identifying the location of the scope when a biopsy is done. Rejecting these procedures in a case of known tortuosity of the colon is a breach of professional endoscopic conduct. Apparently his advice to Dr. Friedman during the operation as to the location of the lesion helped Dr. Friedman make a decision as to the type of operation that he performed. Dr. Sullivan, the radiologist, also made a grave error in misreading the films, since he indicated that the lesion was in the right side of the colon. He may have been assisted in this mistake by the Warren Hospital radiological technician *16 who improperly identified the right and left sides of the patient on the x-ray film. To the trained radiological eye there should be sufficient structures to identify the right and the left side of the colon in any patient. His misrepresentation of the facts to Dr. Friedman was another factor in helping Dr. Friedman make a decision as to the location of the suspected lesion and the type of procedure he was to perform.
The trial judge denied plaintiffs' motion, made pursuant to R. 4:50-1, to vacate the dismissal and to reinstate the complaint against Isaac and Sullivan. She later denied plaintiffs' motion for reconsideration, holding that R. 4:50-1 applies to voluntary dismissals and that plaintiffs' claim for relief based on "newly discovered evidence" (R. 4:50-1(b)) was timebarred by the one-year limitation in R. 4:50-2.
We need not consider whether this accumulation of medical and legal misadventures visited upon plaintiff was sufficient reason for the judge to vacate these voluntary dismissals pursuant to R. 4:50-1(f), which permits relief from a final judgment or order for "any other reason justifying relief from the operation of the judgment or order," regardless of the time when the motion is made. See, e.g., Court Invest. Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966) (the very essence of subsection (f) is its capacity for relief in exceptional situations; boundaries are as expansive as need to achieve equity and justice); Quagliato v. Bodner, 115 N.J. Super. 133, 138, 278 A.2d 500 (App. Div. 1971) (relief under subsection (f) available where enforcement of order would be unjust, oppressive or inequitable). The voluntary stipulations dismissing Isaac and Sullivan were not final judgments. Friedman and Ravanzo remained as defendants.
R. 4:50 applies only to final judgments and orders adjudicating all claims as to all parties. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 263, 531 A.2d 1078 (App.Div. 1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988); see also, Novack v. Chait, 241 N.J. Super. 614, 622-23, 575 A.2d 908 (App.Div. 1990) (judgment did not become final until complaint dismissed as to last remaining defendant). In Johnson, *17 we ruled that review of interlocutory orders is not a matter governed by R. 4:50 but is committed to the trial court's discretion. 220 N.J. Super. at 250, 531 A.2d 1078. That holding is now embodied in the 1989 amendment to R. 4:42-2 which provides that
any order or form of decision which adjudicates fewer than all the claims as to all the parties shall not terminate the action as to any of the claims, and it shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.
The motion judge mistakenly characterized the stipulations of dismissal as final orders under R. 4:50-1. She misapplied Miller v. Estate of Kahn, 140 N.J. Super. 177, 182, 355 A.2d 702 (App.Div. 1976), in which we held that R. 4:50-1 applies to voluntary dismissals entered upon stipulations. While a voluntary dismissal may be a judgment, it is not necessarily a final judgment. The additional inquiry must be whether the stipulation of dismissal ended the case on all issues as to all parties. Where additional parties remain in the case, relief from a dismissal, whether by stipulation or otherwise, must be sought pursuant to R. 4:42-2.
We conclude that the interest of justice requires reinstatement of plaintiffs' complaint against Isaac and Sullivan. They will not be prejudiced by their reentry into this lawsuit. Discovery can be reopened to permit them to take supplemental depositions and to permit participation by all parties in such additional discovery as the trial court considers proper.
We exercise our original jurisdiction pursuant to R. 2:10-5 and disqualify Dr. Isaac's present attorneys from participation in this case. The subsequent employment by that firm of the attorney who originally handled this malpractice case for plaintiffs  and is now accused by plaintiffs of mishandling the case  makes improper the continued presence of this law firm in the litigation. The firm must be disqualified even if the associate disclosed none of his previously acquired knowledge and even though he is no longer employed by Isaac's present lawyers. The appearance, if not the actuality of conflict, mandates *18 removal of these lawyers from this case. R.P.C. 1.9(a)(1), 1.10(a) and (c). Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 221-22, 536 A.2d 243 (1988).
Reversed and remanded to the Law Division for an order reinstating the complaint against defendants Isaac and Sullivan and for further proceedings consistent with this opinion.
NOTES
[1] Sullivan has raised the two-year statute of limitations, N.J.S.A. 2A:14-2, as a defense. The bar of this statute was not considered by the court below and is not part of this appeal. The defense is preserved.