701 A.2d 965

JULIE GANGEMI, EXECUTRIX OF THE ESTATE OF RITA M. BLASKO, DECEASED, AND JULIE GANGEMI, INDIVIDUALLY, PLAINTIFF, v. NATIONAL HEALTH LABORATORIES, INC., DEFENDANT/THIRD-PARTY PLAINTIFF-APPELLANT, v. KENNETH GARRETT, M.D., THIRD-PARTY DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1997—Decided October 28, 1997.

Before Judges HAVEY, NEWMAN and COLLESTER.*

*Brian J. Levine* argued the cause for appellant (*Edell & Associates*, attorneys; *Mr. Levine*, on the brief).

*Beth A. Hardy* argued the cause for respondent (*Francis & Berry*, attorneys; *John W. O'Farrell*, of counsel; *Ms. Hardy*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Defendant, National Health Laboratories, Inc. (NHL), appeals from the grant of summary judgment dismissing its claim for contribution against third-party defendant, Dr. Kenneth Garrett, and also from the denial of its cross-motion to enter a consent judgment reflecting a settlement between NHL and plaintiff Julie Gangemi, who sued NHL individually and as executrix of the estate of Rita M. Blasko. We reverse and remand for further proceedings.

These are the relevant facts. Rita M. Blasko died of advanced cervical cancer. NHL misread a PAP smear in 1989, which, if correctly read, would have led to an early diagnosis of the cancer and effective life-saving treatment. Plaintiff sued NHL after Blasko's death. Plaintiff's attorneys retained an expert who concluded that Dr. Garrett did not deviate from accepted medical

---

* Judge Collester, who had not originally been assigned to hear this appeal, has been added to the panel with the consent of the parties.

practice in relying upon the erroneous PAP smear results forwarded by NHL.

NHL impleaded Dr. Garrett through third-party practice. NHL engaged its own medical expert, Dr. Stephen Leviss, an OB/GYN, who stated that Dr. Garrett should not have relied solely on NHL's statement that the May 1989 PAP smear was negative, but should have considered NHL's other clinical findings. Dr. Leviss reasoned that NHL's results indicated that its diagnosis was obscured by inflammation and excess red and white blood cells. According to Dr. Leviss, these abnormal conditions should have placed Dr. Garrett on alert and he should have reevaluated Blasko immediately. Additionally, NHL retained an oncologist, Dr. Frederick Cohen, who also criticized Dr. Garrett for not performing a biopsy in May 1989, substantially for the same reasons given by Dr. Leviss. In spite of its receipt of these reports, plaintiff never filed a direct claim against Dr. Garrett.

Just prior to trial, a settlement conference was conducted in which attorneys for all parties participated. Plaintiff settled with NHL for $900,000. NHL then filed a stipulation of dismissal with the court, reserving its claims against Dr. Garrett and informing him that it intended to continue with its third-party action.

On September 13, 1996, Dr. Garrett filed a motion for summary judgment, asserting that NHL was not entitled to common law indemnification because of its own admission that it was at least partially responsible for plaintiff's claims. In his motion, Dr. Garrett also argued that NHL could not pursue its right to contribution because a judgment was not entered between plaintiff and NHL, as required by the New Jersey Joint Tortfeasors Act, *N.J.S.A.* 2A:53A–3.

NHL conceded that its admission of partial responsibility prevented it from obtaining indemnification from Dr. Garrett. After receiving the consent of plaintiff's counsel, however, NHL cross-moved to vacate the stipulation of dismissal and enter a consent order of judgment pursuant to *R.* 4:42–2. Dr. Garrett responded to NHL's cross-motion by arguing that, even if the trial court

entered the consent order, NHL would not be entitled to contribution because plaintiff never discharged her claims against Dr. Garrett as required by *Young v. Steinberg,* 53 *N.J.* 252, 250 *A.*2d 13 (1969).

The motion judge granted Dr. Garrett's motion for summary judgment and denied NHL's cross-motion requesting vacation of the filed stipulation of dismissal and entry of a consent judgment, reasoning that NHL would be unable to proceed with its contribution claim, even if its motion to vacate the stipulation of dismissal were granted. The motion judge concluded that NHL was attempting to elevate the settlement to a judgment by an informal consent proceeding, rather than the formal court proceedings contemplated by the *Young* decision. Furthermore, the motion judge found that the plaintiff's failure to discharge her claims against Dr. Garrett as required by *Young* was fatal to NHL's pursuit of a contribution claim under *N.J.S.A.* 2A:53A–3.

Additionally, the motion judge determined that no basis existed for revoking the stipulation of dismissal which was on file with the court. He questioned whether the entry of the stipulation was an effort on NHL's part to avoid public disclosure and adverse publicity among medical practitioners. NHL's attorney represented that entry of a stipulation of settlement rather than a consent judgment was only the consequence of counsel's oversight. Exercising his discretion, the motion judge concluded that it was not in the "interest of justice" under *R.* 4:42–2 to vacate the stipulation of settlement and enter a consent judgment. Consequently, the motion judge granted summary judgment, dismissing the third-party complaint because no claim for contribution was viable.

## I.

On appeal, NHL argues that the motion judge erred in denying its motion to vacate the stipulation of dismissal and enter a consent order of judgment.

The stipulation of dismissal executed by NHL and plaintiff provided:

Plaintiff's claims in the above-entitled action having been amicably adjusted by and between the parties, it is hereby stipulated and agreed that the same be and is hereby dismissed with prejudice without costs against either party.

NHL did not dismiss any of its third party claims against Dr. Garrett. Those claims remained open and NHL informed Dr. Garrett that it intended to pursue them.

■ The Joint Tortfeasors Contribution Act, *N.J.S.A.* 2A:53A–1 to –29, does not recognize a claim for contribution against a joint tortfeasor unless the plaintiff recovers an actual judgment. The relevant statutory provision reads:

Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, *and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors,* either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.

[*N.J.S.A.* 2A:53A–3 (emphasis added).]

■ A simple stipulation of dismissal "does not satisfy the 'judgment' requirement of the act," and the settling party may not seek contribution without a final consent judgment. *Polidori v. Kordys, Puzio & DiTomasso,* 217 *N.J.Super.* 424, 432, 526 *A.*2d 230 (App.Div.1987). Therefore, NHL may not maintain its suit for contribution unless a consent judgment, rather than a stipulation of dismissal, is entered.

*R.* 4:42–2 governs the discretion of a court to vacate a stipulation of dismissal and enter a proposed consent order of judgment. *Lawler v. Isaac,* 249 *N.J.Super.* 11, 17, 592 *A.*2d 1 (App.Div.1991) (holding that a stipulation of dismissal which does not end the case on all issues as to all parties is not a final order, and therefore falls within the purview of *R.* 4:42–2). That rule allows for a revision of a stipulation of dismissal in the sound discretion of the court if it determines it is in the interest of justice.

NHL argues that the interest of justice requires that the court vacate its stipulation of dismissal and enter the consent order of judgment so it may pursue its contribution claim against Dr. Garrett. NHL reasons that such action would not prejudice Dr. Garrett because (1) Dr. Garrett was not a party to the filed stipulation or requested consent order, (2) Dr. Garrett participated in all discovery since May 1995, (3) Dr. Garrett knew of NHL's intention to pursue its claim of contribution after its settlement with plaintiff, and (4) counsel entered the stipulation of dismissal just two months before the request for entry of the consent order. Contending that the entry of a stipulation of dismissal rather than a consent order of judgment was merely through oversight of its counsel, NHL maintains that an attorney's errors should not be visited on its clients. Because it believes its claim for contribution is viable, NHL contends that it would be a miscarriage of justice to allow Dr. Garrett to escape potential liability.

In rejecting the cross-motion to vacate the stipulation of dismissal and enter a consent judgment, the motion judge reasoned that (1) the settlement was not reached by a formal court proceeding; (2) the settlement did not discharge plaintiff's claims against Dr. Garrett; and (3) changing the orders would require the court to become a participant in the dispute and such action would not satisfy the interest of justice standard of *R.* 4:42–2. We address the bases of the motion judge's ruling in this order.

The motion judge refused to enter the consent order of judgment, stating that NHL was requesting an informal consent proceeding which would not satisfy *Young*'s first requirement of "elevat[ion] to the status of a judgment by formal court proceeding." *See Young, supra,* 53 *N.J.* at 255, 250 *A.*2d 13. The issue of what constitutes a formal court proceeding was addressed in *Polidori, supra,* 217 *N.J.Super.* at 425, 526 *A.*2d 230. There, our court rejected the plaintiffs' contention that a stipulation of dismissal satisfied the judgment requirement of the Joint Tortfeasors Contribution Act. We noted, however, that "there is little philosophical difference between a settlement coupled with a Stipula-

tion of Dismissal and a settlement in the form of a consent judgment." *Id.* at 432, 526 *A.*2d 230. Our court inferred from *Young* that a full blown adversary proceeding is not required in order to invoke the contribution law, although some form of judgment is necessary. *Id.* at 431, 526 *A.*2d 230.

NHL originally sought to informally enter a consent judgment by letter to the judge who presided over the settlement conference. It then renewed its request in a formal motion. In *Young,* the Supreme Court regarded the trial court's entry of a consent order upon a simple motion to be a formal court proceeding. Additionally, the settlement in *Young* was reached after negotiations attended by counsel for all parties. Here, not only were all counsel present, but the parties conducted the settlement negotiations before a judge. We are persuaded that NHL's settlement negotiations and cross-motion for entry of a consent judgment fulfilled the formal court proceedings contemplated by the *Young* decision and that the motion judge was mistaken in concluding otherwise.

■ The second reason given by the motion judge for denying NHL's motion to vacate the stipulation of dismissal and enter the proposed consent judgment was the plaintiff's failure to discharge its possible claims against Dr. Garrett. The motion judge correctly articulated that *Young* allows a suit for contribution only where both elements are satisfied: (1) a judgment is obtained by formal court proceeding and (2) the plaintiff's claims against a non-settling joint tortfeasor are discharged.

■ The situation presented here is distinguishable from *Young.* There, plaintiff actually filed a direct claim against the non-settling defendant. Plaintiff in the instant case, however, never filed a claim against Dr. Garrett. Whether or not plaintiff sued Dr. Garrett directly, NHL could still seek contribution under the Joint Tortfeasors Contribution Act, provided that a jury establishes Dr. Garrett's liability. *See Sattelberger v. Telep,* 14 *N.J.* 353, 367–68, 102 *A.*2d 577 (1954) (stating that a "right of

contribution exists among joint tortfeasors regardless of whether the injured plaintiff has sued all in the first instance").

We believe it elevates form over substance to forbid the right to contribution simply because a plaintiff chooses not to sue certain parties who may nonetheless be responsible for that plaintiff's injuries. In *Young*, the Supreme Court emphasized that "contribution is to be encouraged, as it is grounded in principles of fairness and equitable distribution of liability." *Young, supra*, 53 *N.J.* at 255, 250 *A.*2d 13. Under the circumstances, we see no difference between a plaintiff's discharge of a direct claim against a non-settling joint tortfeasor and, as here, a legal discharge by virtue of the operation of the statute of limitations where no direct claim was made by plaintiff against a potentially responsible party. To be sure, the claims which plaintiff asserted in her original action against NHL, even if brought against Dr. Garrett, would be barred by the two year statute of limitation. *See N.J.S.A.* 2A:31–3 (wrongful death suit must be brought within two years); *N.J.S.A.* 2A:14–2 (personal injury actions and survival actions for personal injury must be brought within two years). NHL should not be precluded from its right to contribution simply because plaintiff did not discharge claims which are nevertheless legally barred. As pointed out, the right of contribution among joint tortfeasors does not depend upon whether the injured plaintiff has instituted suit against all of the tortfeasors who may be responsible. We, therefore, are satisfied that NHL met the second prong of the *Young* formulation to allow a suit for contribution.

Lastly, the motion judge concluded that it was not in the interest of justice for the parties "to jockey their positions and alter the facts and change court orders because they're faced with a dismissal." According to the motion judge, no evidence existed that NHL would have ever consented to the entry of a judgment at the time that it settled its claim. He reasoned that a stipulation of dismissal, which is not subject to public disclosure, is a "[f]ar cry from having a judgment entered against you which would be recorded in legal and medical periodicals."

NHL's state of mind is significant to the determination of whether entry of a consent order of judgment is in the interest of justice. NHL would be greatly prejudiced if it lost its entire claim for contribution simply because it entered a stipulation of dismissal instead of a consent judgment as the result of an attorney's oversight. The motion judge based his discretionary determination on a hypothesis not established by any material in the record other than the notion that a stipulation of dismissal is not subject to public disclosure which could impact on NHL's image if reported in various publications. No hearing was conducted to determine the validity of NHL's representation that a stipulation of dismissal was filed because of counsel's oversight.

Dr. Garrett has actively participated in the law suit, including the discovery process, since he was made a third-party defendant in 1995. Dr. Garrett's counsel was present at the settlement conference and was repeatedly informed of NHL's intent to pursue its contribution claim. We fail to see any prejudice if the contribution claim against him is permitted to proceed. *See generally Patterson v. Monmouth Reg'l High School Bd. of Educ.*, 222 *N.J.Super.* 448, 456, 537 *A.*2d 696 (App.Div.1987), *certif. denied*, 110 *N.J.* 183, 540 *A.*2d 180 (1988).

██ The motion judge gave an additional reason for his conclusion that vacating the stipulation of dismissal would not serve the interest of justice. Changing orders now, he reasoned, would include the court as a participant to the law suit. We do not understand how the traditional role of the court is affected by granting the relief sought. *R.* 4:42–2 allows the court to intervene to serve the interest of justice. Justice requires that joint tortfeasors pay their fair share of their responsibility. *See Young, supra,* 53 *N.J.* at 255, 250 *A.*2d 13. Contribution and settlement are both matters which our courts encourage. *Id.; see also Karpovich v. Barbarula,* 150 *N.J.* 473, 482, 696 *A.*2d 659 (1997) (discussing the public policy of favoring settlements). The refusal to vacate the stipulation on the basis of the court's desire not to become a participant in the action is ill-founded.

We remand for resolution of the factual issue raised concerning the bona fides of NHL's intent in originally entering into a stipulation of settlement. Because we have eliminated every other basis which may preclude NHL's requested relief of entry of a consent judgment, NHL's claim for contribution hinges upon this factual determination.

## II.

NHL also asserts that the motion judge erred in granting Dr. Garrett's motion for summary judgment and dismissing NHL's claim for contribution. NHL contends that if the court entered a consent order of judgment between NHL and plaintiff, NHL would be entitled to seek contribution from Dr. Garrett pursuant to *N.J.S.A.* 2A:53A-3, assuming it could establish Dr. Garrett's liability.

Dr. Garrett argues that, even if the consent judgment were entered, Dr. Garrett would still be entitled to summary judgment as a matter of law because plaintiff never discharged its possible claims against Dr. Garrett. We have already addressed that issue and determined that it would not result in an obstacle to NHL's contribution claim.

Dr. Garrett also contends that no proof exists that NHL paid more than its fair share for plaintiff's injuries. Because NHL did not discharge all possible claims against Dr. Garrett, it could still assert a second claim against him. Dr. Garrett reasons, therefore, that NHL is not entitled to contribution. We reject this argument.

Whether and to what extent Dr. Garrett was responsible for the decedent's death is a matter for a jury to determine. The motion judge did not have to consider these issues because of the decision that NHL's claim for contribution was precluded by its failure to have originally filed a consent judgment. Joint tortfeasors are entitled to contribution, regardless of whether the plaintiff sued each of them in its initial action. *Sattelberger, supra,* 14

*N.J.* at 367–68, 102 *A.*2d 577. Dr. Garrett's negligence presents an issue that is factually disputed as evidenced by conflicting experts' reports. This dispute must be resolved, as well as the percentage of damages, if any, resulting from the acts of medical malpractice.[1] These raise genuine issues of material fact which preclude the grant of summary judgment.

Reversed and remanded for further proceedings consistent with this opinion.

---

[1] The Comparative Negligence Act, *N.J.S.A.* 2A:15–5.3, provides that "[a]ny party who is compelled to pay more than his percentage share may seek contribution from other joint tortfeasors." Accordingly, on remand, a jury should be empaneled to determine both NHL's and Dr. Garrett's percentage of responsibility for plaintiff's damages.