**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-3748

———————

MICHAEL S. CRAIG; BILLIE R. CRAIG

v.

DAVID T. NORTON; JB HUNT TRANSPORT, INC.;
DAVID DEPUE, a/k/a LEHIGH VALLEY FLEET MAINTENANCE;
LEHIGH VALLEY FLEET MAINTENANCE;
LEHIGH VALLEY TRAILER SERVICE; LEHIGH VALLEY FLEET MAINTENANCE
ABC COMPANY 1-5; JOHN
DOES 1-5; J. ROSS;
AUSTIN FLEET MAINTENANCE INC, and/or Austin Fleet Maintenance

David T. Norton;
J.B. Hunt Transport, Inc.;
J. Ross, Appellants

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-06-cv-01981)
District Judge: Hon. Joel A. Pisano

———————

Argued June 22, 2010

BEFORE: SMITH, FISHER, and COWEN, Circuit Judges

(Filed: July 27, 2010)

Christopher M. Cano, Esq.
Robert J. Franco, Esq. (Argued)
Bollinger, Ruberry & Garvey
500 West Madison Street

Suite 2300
Chicago, IL 60661

Jon M. Dumont, Esq.
Rawle & Henderson
401 Route 73 North
40 Lake Center Executive Park, Suite 200
Marlton, NJ 08053

Dawn L. Jennings, Esq.
Rawle & Henderson
1339 Chestnut Street, The Widener Building
One South Penn Square, 16th Floor
Philadelphia, PA 19107

*Counsel for Appellants*

Dante C. Rohr, Esq.
John L. Slimm, Esq. (Argued)
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Woodland Falls Corporate Park, Suite 300
Cherry Hill, NJ 08002

*Counsel for Appellee Austin Fleet Maintenance Inc.*,

---

OPINION

---

COWEN, <u>Circuit Judge</u>

Defendants J. B. Hunt Transport, Inc. ("J. B. Hunt"), David T. Norton and J. Ross appeal from the order of the United States District Court for the District of New Jersey granting summary judgment in favor of Defendant Austin Fleet Maintenance, Inc. ("Austin"). Because of the presence of genuine issues of material fact, we will vacate the

District Court's order and remand for further proceedings.

I.

This action arises out of a motor vehicle accident that occurred on September 16, 2005, on Interstate 78 in Hunterdon County, New Jersey. Norton, a resident of Pennsylvania, was operating a tractor trailer owned by J. B. Hunt, a Georgia corporation with its principal place of business in Arkansas. While Norton was driving on the westbound side of the highway, the left rear tandem wheels separated from the fifth axle of the trailer. The wheels went into the center median, striking the vehicle occupied by Plaintiff Michael S. Craig. A New Jersey state trooper (and New Jersey resident), Craig, was monitoring the traffic at the time. The nuts, screwsets, lock washers, and bearings previously attached to the trailer's wheel assembly were never recovered. On September 27, 2005, J. B. Hunt repaired the trailer at its facility in East Brunswick, New Jersey, and the remaining brake shoes, wheel seal, and inner bearing cone were not retained.

Austin, a Pennsylvania corporation, operates a repair facility in Allentown, Pennsylvania. On March 11, 2003, it performed work on the trailer and, in particular, the fifth axle assembly hardware on both the right and left sides. Between March 11, 2003 and September 16, 2005 (the date of the accident), the trailer logged over 100,000 miles, was operated for a total of 895 days, and traveled an average of 124 miles per day. On January 2, 2005, Defendant Lehigh Valley Fleet Maintenance Ltd. ("Lehigh Valley"), a repair facility located in Kunkletown, Pennsylvania, performed a bi-annual Department of

3

Transportation ("DOT") mandatory inspection of the trailer. At its East Brunswick facility, J. B. Hunt conducted another DOT inspection on July 2, 2005, and it also performed work on the trailer between June 23, 2005 and July 4, 2005. Finally, Defendant David DePue, Lehigh Valley's president and a Pennsylvania resident, was called out to provide road-side service on the trailer in July 2005.

Craig and his wife, Billie R. Craig, initially filed their state law negligence action in a New Jersey state court, naming J. B. Hunt, Norton, Lehigh Valley, and DePue as Defendants. Alleging diversity jurisdiction, J. B. Hunt and Norton removed this action to the District Court. Plaintiffs then filed an amended complaint, adding Ross, a J. B. Hunt maintenance technician and an apparent resident of New Jersey, as a Defendant. Plaintiffs subsequently filed a second amended complaint, naming Austin as yet another Defendant. J. B. Hunt, Norton, and Ross filed an answer to the second amended complaint, alleging, inter alia, their own cross-claim for contribution and indemnity against Austin.

On May 9, 2008, Austin, individually, and Lehigh Valley and DePue, collectively, filed motions for summary judgment on all claims and cross-claims against them.[1] On August 5, 2008, the District Court granted the respective motions for summary judgment, and it dismissed all claims against these three Defendants. On September 2, 2008, J. B. Hunt, Norton, and Ross filed a notice of appeal. These three Defendants and Austin are

---

[1] Lehigh Valley and DePue had previously moved for summary judgment, which the District Court denied without prejudice pending expert discovery. Expert discovery was conducted and disclosed in accordance with Federal Rule of Civil Procedure 26.

4

the only parties who have participated in this appeal.

Meanwhile, Plaintiffs entered into a confidential settlement agreement with J. B. Hunt, Norton, and Ross. The three settling Defendants, however, expressly preserved their right to pursue any claims for indemnity, contribution, or subrogation against, among others, Austin. Because of the injuries Craig suffered, the settlement apparently required judicial approval. A hearing was accordingly held before the Magistrate Judge on October 10, 2008. Counsel for Austin were evidently present at the hearing and raised no objections. In a sealed order filed on October 10, 2008, the Magistrate Judge: (1) approved the settlement of Plaintiffs' claims; (2) ordered J. B. Hunt, Norton, and Ross to pay a specified sum of money to the settlement trust account within 14 days; (3) described in some detail how the settlement funds would be disbursed; and (4) approved the award of attorneys' fees to Plaintiffs's counsel. On the same day, the Magistrate Judge filed a report and recommendation, evidently asking the District Court: (1) to dismiss all of the claims alleged by Plaintiffs; (2) to confirm that the claims against Austin, Lehigh Valley and DePue were previously dismissed pursuant to the August 5, 2008 order, and (3) to note that J. B. Hunt, Norton, and Ross have otherwise preserved their right to appeal as to their respective claims against Austin. On October 29, 2008, the District Court adopted this report and recommendation, dismissed Plaintiffs' complaint, and closed the case itself.

II.

Austin contends that the settlement extinguished any claim for contribution that J.

5

B. Hunt, Norton, and Ross[2] may have possessed.  New Jersey's contribution statute

---

   [2]  In their respective responses to the Clerk's letter of June 3, 2010, the parties to this appeal agree that the addition of Ross (an apparent New Jersey resident) as a Defendant "destroyed" diversity jurisdiction.  They nevertheless ask this Court to dismiss Ross as a dispensable party and thereby cure the outstanding jurisdictional defect.  The courts of appeals do possess the authority to dismiss non-diverse yet dispensable parties in order to cure jurisdictional deficiencies.  See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 827-38 (1989).  However, this power "should be exercised sparingly."  Id. at 837.  "In each case, the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation."  Id. at 837-38.  In particular, the court should consider whether the presence of this party has provided a tactical advantage to one side or the other and whether there are any factual disputes regarding possible prejudice that more properly should be decided by the district court.  Id. at 838; see also, e.g., Curry v. U.S. Bulk Transport, Inc., 462 F.3d 536, 539-43 (6th Cir. 2006) (refusing to dismiss non-diverse and dispensable defendants in removed action where, inter alia, plaintiff himself wished to pursue his claims against all defendants in single action in state court).

   Given the rather unusual circumstances present here, we find that it is appropriate to dismiss Ross and thereby retain jurisdiction.  It appears uncontested that Ross, an employee of J. B. Hunt, is a dispensable party pursuant to Federal Rule of Civil Procedure 19.  In turn, his dismissal evidently will not result in any prejudice.  Specifically, Plaintiffs already settled all of their claims and accordingly chose not to participate in this appeal.  J. B. Hunt and Norton initially removed this case to the District Court and now request Ross's dismissal.  Austin likewise joins in the request of its current adversaries.  Ross, in turn, received a release as part of the settlement, and he evidently has no objection to his dismissal at this point in time.  Furthermore, any discovery specifically directed to Ross could have also been obtained from his employer.  Finally, any refusal to dismiss Ross at this late stage of the proceedings will only lead to duplicative and burdensome litigation in the state courts.  Cf., e.g., Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 22-23 (1st Cir. 2005) (dismissing non-diverse and dispensable defendant in removed action over plaintiff's objection because such dismissal would not prejudice remaining parties or dismissed defendant); Ingram v. CSX Transp., Inc., 146 F.3d 858, 861-63 (11th Cir. 1998) (dismissing non-diverse and dispensable party in similar circumstances).

expressly refers to a "money judgment or judgments."[3]  N.J. Stat. Ann. § 2A:53A-3.  "By the terms of this statute, a 'judgment' is required in order to trigger the right to contribution."  Polidori v. Kordys, Puzio & Di Tomasso, 526 A.2d 230, 234 (N.J. Super. Ct. App. Div. 1987).  The New Jersey Appellate Division has ruled that "[a] simple stipulation of dismissal 'does not satisfy the "judgment" requirement of the act.'"  Gangemi v. Nat'l Health Labs., Inc., 701 A.2d 965, 967 (N.J. Super. Ct. App. Div. 1997) (quoting Polidori, 526 A.2d at 234).  On the other hand, the New Jersey Supreme Court has stated that "[a] suit for contribution based on a settlement which has been elevated to the status of a judgment by formal court proceeding, and which discharges the injured party's claim against a non-settling joint tortfeasor, comports with the intent of our statutory scheme."  Young v. Steinberg, 250 A.2d 13, 14 (N.J. 1969) (per curiam).  Therefore, full-blown adversarial proceedings are not required, and, on the contrary, a consent judgment entered on the docket may be sufficient to trigger a right to contribution

_____

[3] Because we ultimately find that New Jersey's "judgment" requirement has been satisfied, we need not consider Appellants' alternative choice-of-law argument that we should consider their claims under Pennsylvania's contribution statute.  In applying the substantive law of New Jersey, we initially look to any relevant rulings by the state's supreme court.  See, e.g., Norfolk Southern Ry. v. Bassell USA Inc., 512 F.3d 86, 91-92 (3d Cir. 2008); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996).  When the state's highest court has not yet addressed the precise question presented, we must predict how it would resolve such a question.  See, e.g., Orson, Inc., 79 F.3d at 1373 n.15.  "Although not dispositive, decisions of state intermediate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise."  Id. (citing Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991)).

under New Jersey law. See, e.g., id.; Gangemi, 701 A.2d at 967-68; Polidori, 526 A.2d at 232-34.

We find that this "judgment" requirement has been satisfied here because, among other things: (1) the Magistrate Judge actually conducted a hearing, with counsel for Austin evidently present but raising no objections, in order to determine whether the settlement should receive judicial approval; (2) after the hearing, the Magistrate Judge filed an order that expressly approved the settlement of Plaintiffs' claims, ordered J. B. Hunt, Norton, and Ross to pay a specified sum of money to the settlement trust account within 14 days, specified in some detail how the settlement funds would be disbursed, and approved the award of attorneys' fees; (3) the Magistrate Judge likewise filed a report and recommendation, which stated, inter alia, that all of the Plaintiffs' claims should be dismissed and that J. B. Hunt, Norton, and Ross "has preserved its right to appeal its claims against" Austin (A21); (4) no objections were submitted with respect to this report and recommendation; and (5) the District Court ultimately adopted the Magistrate Judge's report and recommendation in an order entered on the docket.

Turning to the merits, we conclude that the District Court erred by granting summary judgment in favor of Austin.[4] Specifically, there are genuine issues of material

---

[4] We review de novo a district court order granting or denying a motion for summary judgment. See, e.g., Levy v. Sterling Holding Co., 544 F.3d 493, 501 (3d Cir. 2008). Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(3).

8

fact as to whether Austin may be held at least partially responsible for the accident and the resulting injuries suffered by Craig. While recognizing that the exact cause of the wheel separation is not clear and that various theories have been advanced, the District Court expressly found that there is no evidence in the record supporting the claim that Austin was negligent when it performed its work on the trailer in 2003. Rejecting as misplaced the citation to the doctrine of *res ipsa loquitur*, it explained that J. B. Hunt maintained exclusive control over the trailer. According to the District Court, J. B. Hunt thereby was responsible for maintaining and inspecting the trailer during the two and a half year period between the time Austin worked on the trailer and the date of the accident, and it, in fact, did perform additional work on the trailer itself in 2005. Nevertheless, the record does contain evidence that could lead a reasonable finder of fact to conclude that Austin was negligent and that its negligent conduct, at least partially, caused the wheel separation. For instance, we note that: (1) the State Police found that the "threads were visible damaged towards bottom outside" (A27); (2) as the District Court recognized, the State Police investigation further "revealed tool markings on the jam nut of the wheel assembly on the fifth right rear axle, indicating that improper tools were used on that side" (A14 (citation omitted)); (3) the State Police were actually "unable to fit a socket on the jam nut due to the ears on the nut" (A27); (4) at his deposition, the State Police investigator specifically pointed out these tool markings from photographs of the right wheel assembly area; (5) the wheel bearing manufacturer's manual contained an explicit warning against removing nuts

with a hammer or by striking a chisel or other tool, stating that such practices could result in loss of components, component damage, and serious personal injury, and it likewise warned that an overly tight adjustment could cause complete bearing failure and the loss of equipment; and (6) the same Austin employee evidently performed the work on both the right and left wheel assembly areas. Under the circumstances, the various expert opinions, concluding that Austin improperly installed the wheel bearings leading to a slow and progressive failure and resulting wheel detachment, are adequately supported by at least some of the evidence in the record and may not be rejected out of hand as mere "net" opinions. See, e.g., Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 415 n.3 (3d Cir. 2002) (finding Federal Rule of Civil Procedure 703 satisfied where record contained "*some* factual basis" for expert testimony). On the contrary, these expert opinions further highlight the existence of genuine issues of material fact with respect to Austin's alleged role in the accident.

Based on this record, we acknowledge that a finder of fact *could* ultimately determine that Austin never breached its duty of care and/or that any deficiencies on its part in no way contributed to the accident. Nevertheless, we believe that such factual matters must be resolved by the ultimate finder of fact, and not in a district court's summary judgment ruling.

III.

For the foregoing reasons, we will vacate the District Court's summary judgment

10

order in favor of Austin and remand for further proceedings.