LEWIS, J.
 

 Healthcare Staffing Solutions, Inc., successor by merger to StarMed Staffing, Inc.
 
 (“StarMed”)
 

 [1]
 

 ,
 
 appeals an Amended Final Judgment finding it liable to University Medical Center (“UMC”) in an action for contribution under section 768.31, Florida Statutes (1997), and equitable subrogation. UMC’s claim for contribution against StarMed arose after the settlement of a medical malpractice suit. StarMed raises several issues on appeal, only two of which merit discussion: (1) whether the trial court erred in refusing to consider the alleged negligence of other actors for the purpose of apportioning the fault between StarMed and UMC and (2) whether the trial court committed harmful error in imposing a presumption of negligence under
 
 Public Health Trust of Dade County v. Valcin,
 
 507 So.2d 596 (Fla.1987). We find reversible error as to the first issue and harmless error as to the second. The remaining issues raised in StarMed’s initial brief are affirmed without discussion. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 

 I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 On April 10, 1997, Helene Wilkinson was admitted to UMC with a diagnosis of “fever of unknown origin.” She was discharged from UMC on May 1, 1997, only to return again on May 3, 1997, with the same diagnosis. The physicians who treated Mrs. Wilkinson at UMC were employees of the Florida Board of Regents (“FBOR”). Her other caregivers at UMC included non-physician employees of UMC and a traveling nurse who was working under a contract between StarMed and
 
 *729
 
 UMC. This nurse (“the StarMed nurse”) was primarily responsible for Mrs. Wilkinson’s nursing care during the 7:00 a.m. to 7:00 p.m. shift on May 5, 1997. During that shift, Mrs. Wilkinson collapsed and lost her pulse due to a life-threatening heart condition known as “tamponade.” Mrs. Wilkinson’s pulse was restored, but due to the length of time she was without a pulse, she became permanently comatose.
 

 Mrs. Wilkinson, through her legal guardian, and her family (“the Wilkinson Plaintiffs”) brought a medical malpractice action against UMC and FBOR. UMC filed a third-party complaint against StarMed, alleging that it was liable for any negligence attributable to its nurse. Thereafter, UMC and FBOR settled with the Wilkinson Plaintiffs for a total sum of $6,150,000. FBOR paid $200,000, which is the amount representing the extent to which the Legislature has waived sovereign immunity.
 
 See
 
 § 768.28(5), Fla. Stat. (1997). UMC paid $5,950,000 and sought contribution and equitable subrogation from StarMed. StarMed alleged, as an affirmative defense, that the damages UMC paid were caused in all or in part by other persons or entities, including the FBOR physicians.
 

 Prior to the non-jury trial, the trial court ruled that StarMed’s proffered evidence of the FBOR physicians’ negligence would not be considered, as it was irrelevant to an assessment of the portion of UMC’s settlement for which StarMed was liable. After the trial, the court issued an Amended Final Judgment finding the StarMed nurse negligent in several critical respects. The trial court detailed the evidence upon which its findings of negligence were based and then noted that the StarMed nurse had destroyed certain informal nursing notes related to Mrs. Wilkinson’s care. The trial court stated, “The failure to properly document Mrs. Wilkinson’s record followed by the destruction of the [informal nursing notes] further bolsters the Court’s conclusions that [the StarMed nurse] was negligent and that such negligence was the legal cause of Mrs. Wilkinson’s damages.” The court concluded, based on the destruction of the nursing notes, that UMC was entitled to a rebutta-ble presumption of negligence on the part of the StarMed nurse, pursuant to
 
 Public Health Trust of Dade County v. Valcin,
 
 507 So.2d 596 (Fla.1987). Ultimately, the trial court found that StarMed was liable for eighty-five percent of UMC’s settlement payment and UMC was responsible for fifteen percent. StarMed appealed.
 

 II. ANALYSIS
 

 A. Apportionment of Fault in Contribution Claims
 

 On appeal, StarMed argues that the trial court erred in refusing to consider the FBOR physicians’ negligence in determining the amount of StarMed’s liability under the contribution claim. In Florida, the right to contribution is a creature of statute.
 
 Hyster Co. v. David,
 
 612 So.2d 678, 680 (Fla. 1st DCA 1993). Its parameters are set forth in the Uniform Contribution Among Tortfeasors Act (“the Contribution Act”), which provides that “[n]o tortfeasor is compelled to make contribution beyond her or his own pro rata share of the entire liability.” § 768.31(2)(b), Fla. Stat. (1997). Whether the trial court erred in refusing to consider the alleged negligence of the FBOR physicians depends on whether their alleged negligence was necessary to an accurate determination of StarMed’s pro rata share of the “entire liability.” We find that the Contribution Act is clear and unambiguous on this point. Therefore, our analysis is controlled by a de novo consideration of the statute’s plain language.
 
 See City of Parker v. State,
 
 992 So.2d 171, 176 (Fla.2008).
 

 
 *730
 
 The Contribution Act further provides, in pertinent part, as follows:
 

 (2)RIGHT TO CONTRIBUTION.—
 

 (a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, ... there is a right of contribution among them even though judgment has not been recovered against all or any of them.
 

 (b) The right of contribution exists only in favor of a tortfeasor who has paid more than her or his pro rata share of the common liability, and the tortfea-sor’s total recovery is limited to the amount paid by her or him in excess or her or his pro rata share. No tortfeasor is compelled to make contribution beyond her or his own pro rata share of the entire liability.
 

 [[Image here]]
 

 (d) A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury ... is not extinguished by the settlement or in respect to any amount paid in a settlement which is in excess of what was reasonable.
 

 [[Image here]]
 

 (3)PRO RATA SHARES.—In determining the pro rata shares of tortfeasors in the entire liability:
 

 (a) Their relative degrees of fault shall be the basis for allocation of liability.
 

 § 768.31, Fla. Stat. (1997). To determine a contribution defendant’s pro rata share, the trial court must determine the amount of the “entire liability,” the identity of each person who contributed to the injury that gave rise to the original tort claim, and the percentage of fault attributable to each of those persons.
 
 See id.
 

 Because the right to contribution exists only where two or more persons have become liable in tort for the “same injury,” section 768.31(2)(a), the term “liability,” as used throughout the Contribution Act, refers to liability for the injury that gave rise to the original tort claim. Naturally, then, the “entire liability” as used in section 768.31(2)(b) refers to the responsibility born by all of the tortfeasors who contributed to any degree to the original plaintiffs injury.
 
 Cf. Home Ins. Co. v. Advance Mach. Co.,
 
 500 So.2d 664, 669 (Fla. 1st DCA 1986) (defining “common liability” as “the joint causing of damage or injury”).
 

 The Contribution Act requires that a trial court apportion each tortfeasor’s liability according to his or her relative degree of fault in causing the injury giving rise to the tort claim. § 768.31(3)(a). It is impossible to determine one party’s percentage of fault for an injury without also considering the relative degrees of fault of all other actors who contributed to the injury.
 
 Fabre v. Marin,
 
 623 So.2d 1182, 1185 (Fla.1993) (receded from on other grounds in
 
 Wells v. Tallahassee Mem’l Reg’l Med. Ctr., Inc.,
 
 659 So.2d 249, 251-52 (Fla.1995)). Construing the comparative fault statute, the Florida Supreme Court has held that a tortfeasor’s “[liability is to be determined on the basis of the percentage of fault of each participant to the accident and not on the basis of solvency or amenability to suit of other potential defendants.”
 
 Id.
 
 at 1186. The apportionment provision of the Contribution Act is based on the same principle as Florida’s comparative fault statute, which is codified at section 768.81.
 
 Compare
 
 § 768.81(3), Fla. Stat. (1997) (providing that, in cases where the comparative fault statute applies, “the court shall enter judgment against each party liable on the basis of such party’s percentage of fault”)
 
 with
 
 
 *731
 
 § 768.31(3)(a) (providing that the tortfea-sors’ “relative degrees of fault shall be the basis for allocation of liability”). Therefore, the principles discussed in
 
 Fabre
 
 govern the determination of each party’s pro rata share of the entire liability in a contribution claim.
 

 Here, the trial court erroneously focused on the liability UMC incurred in paying $5,950,000 in settlement to the Wilkinson Plaintiffs, instead of the liability incurred by all of the tortfeasors whose negligence contributed to Mrs. Wilkinson’s injury. The trial court was persuaded by UMC’s arguments that the FBOR physicians’ negligence was irrelevant to the contribution claim because none of the dollars UMC paid in settlement represented the physicians’ liability. UMC argued that its settlement represented the non-physician fault and that because UMC and StarMed were jointly liable only for the non-physician fault, the apportionment of fault between UMC and StarMed should be based only on the non-physician fault. This argument is not grounded in the language of the Contribution Act. The starting point for apportionment of fault under the Contribution Act is the sum of all the liability incurred by all of the tortfeasors responsible for the injury to the original plaintiff. The Act does not provide for separate amounts of “entire liability” based on the separate identities of the tortfeasors. Mrs. Wilkinson suffered one injury, which resulted from the culmination of the negligence of various caregivers, physician and non-physician alike. Thus, in apportioning fault among all of the tortfeasors who contributed to Mrs. Wilkinson’s injury, the trial court should not have accepted UMC’s subjective view that its settlement dollars paid for one part of the injury and FBOR’s settlement dollars paid for another part. If a person’s act or omission contributed to the original plaintiffs injury in any way, that person is to be counted as one of the parties responsible for the original plaintiffs injury, and that person’s degree of fault is to be assessed for the purposes of apportioning fault. Evidence of that person’s acts or omissions is relevant to determining the relative degrees of fault of all the tortfeasors, regardless of whether any party will actually be able to recover money damages from that person.
 

 The trial court, as the trier of fact, should have considered StarMed’s evidence regarding the alleged negligence of the FBOR physicians in determining StarMed’s pro rata share of the entire liability. FBOR’s sovereign immunity should not have entered into the analysis. Because the trial court failed to consider StarMed’s evidence of the negligence attributable to FBOR, we are unable to determine whether StarMed was ordered to pay more than its pro rata share of the entire liability in violation of section 768.31(2)(b). Therefore, we reverse on this point.
 

 B. The
 
 Valcin
 
 Presumption
 

 StarMed also argues that the trial court erred in recognizing a presumption that the StarMed nurse was negligent based on the destruction of certain informal notes associated with Mrs. Wilkinson’s chart and nursing flowsheet. The presumption was derived from
 
 Public Health Trust of Dade County v. Valcin,
 
 507 So.2d 596, 599-601 (Fla.1987), where the supreme court approved the application of a rebuttable presumption of negligence in cases where evidence that is “peculiarly within the knowledge of the adversary ... is not made available to the party which has the burden of proof.” To receive the benefit of the presumption, “a plaintiff must first establish to the satisfaction of the court that the absence of the [evidence] hinders his ability to establish a prima facie case.”
 
 Id.
 
 at 599. A trial
 
 *732
 
 court’s decision to impose the
 
 Valcin
 
 presumption is reviewed for abuse of discretion.
 
 Anesthesiology Critical Care & Pain Mgmt. Consultants, P.A. v. Kretzer,
 
 802 So.2d 346, 349 n. 3 (Fla. 4th DCA 2001).
 

 Here, the
 
 Valcin
 
 presumption was imposed because the StarMed nurse admitted she destroyed her informal notes relating to Mrs. Wilkinson’s care on May 5, 1997. According to the StarMed nurse’s testimony, she would typically keep informal notes on her patients and, when time permitted, transfer the information from her notes to her patients’ flowsheets and charts. She testified that she threw the notes away after putting the information in Mrs. Wilkinson’s chart. UMC argued that because Mrs. Wilkinson’s chart and flow-sheet were essentially blank, it needed the StarMed nurse’s informal notes to determine vital information such as Mrs. Wilkinson’s condition throughout the day and whether the StarMed nurse had administered IV fluids as ordered.
 

 The trial court’s order reveals that, even without the notes, it had no difficulty concluding that the StarMed nurse was negligent for many reasons, including the failure to administer IV fluids. In fact, the trial court, as the trier of fact, expressly used the
 
 Valcin
 
 presumption only to “bolster” its conclusion, formed on the basis of other evidence, that the StarMed nurse was negligent. Thus, the trial court’s order itself reveals that UMC was able to establish a prima facie case of negligence on the part of the StarMed nurse without the nursing notes. Accordingly, the trial court abused its discretion in applying the presumption.
 

 Ironically, our basis for finding error in applying the presumption shows why the error in this case was harmless. In a civil case, ,“[t]he test for harmful error is whether, but for such error, a different result may have been reached.”
 
 Katos v. Cushing,
 
 601 So.2d 612, 613 (Fla. 3d DCA 1992). The trial court’s order reveals that it reached the conclusion that the StarMed nurse was negligent independently from its application of the presumption. Removing the presumption would not change the trial court’s findings. Therefore, harmless error occurred. We note the error only to assist the trial court in handling the
 
 Valcin
 
 issue should it arise again on remand.
 

 III. Conclusion
 

 The trial court erred in two respects: first, in refusing to consider evidence of negligence attributable to FBOR employees in determining StarMed’s pro rata share of the entire liability, and second, in applying the
 
 Valcin
 
 presumption, despite finding that UMC was able to prove a prima facie case of negligence against the StarMed nurse. Because the trial court arrived at the conclusion that the StarMed nurse was negligent without the assistance of the presumption, the recognition of the presumption was harmless. We reverse only as to the improper method of determining StarMed’s pro rata share. Accordingly, the Amended Final Judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 

 WOLF and ROBERTS, JJ., concur.
 

 [1]
 

 . Healthcare Staffing Solutions, Inc., the appellant, will also be referred to as "StarMed” for the purposes of this opinion.