WETHERELL, J.
Appellant seeks review of a final judgment in favor of University Medical Center, Inc. (UMC), in a contribution and equitable subrogation action arising out of a settled medical malpractice case. Appellant argues, and we agree, that the trial court erred in calculating Appellant’s pro rata share of the entire liability for the underlying malpractice claim based on the potential value of the claim rather than the amount paid to settle the claim.
In 1998, Helene Wilkinson sued UMC and the Florida Board of Regents (FBOR) for medical malpractice. The case was settled in 2001 for $6.15 million, with UMC paying $5,950,000 and FBOR paying its sovereign immunity limit of $200,000. UMC thereafter brought a contribution and equitable subrogation action against Appellant for its pro rata share of the settlement. Following a non-jury trial, the trial court ordered Appellant to pay UMC $5,057,500 (which is 85% of the amount paid by UMC), plus prejudgment interest, based on the court’s apportionment of 85% of fault for the malpractice claim to Appellant and 15% of the fault to UMC. The trial court did not apportion any fault to FBOR because it found FBOR’s negligence irrelevant to UMC’s contribution claim against Appellant. Appellant appealed, and in Healthcare Staffing Solutions, Inc. v. Wilkinson, 5 So.3d 726 (Fla. 1st DCA 2009), this court reversed the judgment based on the trial court’s failure to consider FBOR’s fault in determining Appellant’s “pro rata share of the entire liability” under section 768.31(2)(b), Florida Statutes (1997).
On remand, after a non-jury trial, the trial court apportioned fault for the underlying malpractice claim as follows: 70% to FBOR, 25.5% to Appellant, 4.5% to UMC, and 0% to Wilkinson. The trial court concluded that it would be inconsistent with this court’s prior opinion to construe the phrase “entire liability” in section 768.31(2)(b) to mean the amount of the settlement and, instead, concluded that the phrase meant the potential value of the underlying malpractice claim. Then, based on its finding that the reasonable *521 value of the malpractice claim was $15 million, the trial court determined that Appellant’s pro rata share of this “entire liability” was 25.5%, or $3,825,000, and alternatively, that UMC was entitled to judgment in that amount based on its equitable subrogation claim. The trial court thereafter entered a judgment, and then a corrected judgment, in favor of UMC for $3,825,000, plus prejudgment interest of approximately $2.5 million. Appellant timely appealed the corrected judgment to this court.
Appellant does not contest the trial court’s finding that the potential value of the underlying malpractice claim was $15 million, nor does it contest the trial court’s apportionment of fault. Rather, the narrow issue framed in this appeal is whether the phrase “entire liability” in section 768.31(2)(b) means the potential value of the underlying malpractice claim (as determined by the trial court and urged by UMC) or the amount of the settlement (as urged by Appellant). This is an issue of statutory interpretation, which we review de novo. See Healthcare Staffing Solutions, 5 So.3d at 729.
Contribution is a statutory remedy, the parameters of which are set forth in section 768.31, Florida Statutes. Id. The particular provision implicated in this case is paragraph (2)(b), which provides:
The right of contribution exists only in favor of a tortfeasor who has paid more than her or his pro rata share of the common liability, and the tortfeasor’s total recovery is limited to the amount paid by her or him in excess of her or his pro rata share. No tortfeasor is compelled to make contribution beyond her or his own pro rata share of 'the entire liability.
§ 768.31(2)(b), Fla. Stat. (1997).
The first sentence of this statute focuses on the contribution plaintiff (here, UMC), whereas the second sentence focuses on the contribution defendant (here, Appellant). There is no dispute that UMC and Appellant had a common liability to Wilkinson in the malpractice case and that UMC paid more than its pro rata share of that liability. Thus, UMC meets the criteria in the first sentence of paragraph (2)(b) and has a right of contribution against Appellant. The dispute in this appeal arises under the second sentence, which caps the amount Appellant is required to pay at its “pro rata share of the entire liability.”
We explained in the prior appeal that to determine a contribution defendant’s pro rata share, the trial court must determine:
[1] the amount of the “entire liability,” [2] the identity of each per.son who contributed to the injury that gave rise to the original tort claim, and [3] the percentage of fault attributable to each of those persons.
Healthcare Staffing Solutions, 5 So.3d at 730. The prior appeal focused on the trial court’s failure to apportion fault to all of the tortfeasors responsible for Wilkinson’s injuries (steps 2 and 3). This court’s opinion in the prior appeal did not address the proper amount of the “entire liability” (step 1) except to reject the contention that there are “separate amounts of ‘entire liability’ based on the separate identities of the tortfeasors,” id. at 731, and to note that “the ‘entire liability’ ... refers to the responsibility born[e] by all of the tortfea-sors who contributed to any degree to the original plaintiffs injury.” Id. at 730.
The prior opinion did state that “FBOR’s sovereign immunity should not have entered into the analysis.” Id. at 731. However, contrary to the trial court’s interpretation on remand, this statement had nothing to do with the proper amount *522 of the “entire liability.” Rather, it is clear from the preceding paragraph of the prior opinion that the point of this statement was to emphasize that Wilkinson’s inability to recover more than $200,000 from FBOR should not weigh into the trial court’s apportionment of fault to all of the tortfea-sors, including FBOR. See id. (“Evidence of that person’s acts or omissions is relevant to determining the relative degrees of fault of all the tortfeasors, regardless of whether any party will actually be able to recover money damages from that person.”). Accord Allied-Signal, Inc. v. Fox, 623 So.2d 1180 (Fla.1993) (requiring consideration of percentage of fault of employer in negligence suit against equipment manufacturer for employee’s injury on job even though employer was immune from tort under worker’s compensation law); Fabre v. Marin, 623 So.2d 1182 (Fla.1993) (requiring liability to be apportioned to all participants in an accident, including those not joined as defendants), receded from on other grounds by Wells v. Tallahassee Mem’l Reg’l Med. Ctr., Inc., 659 So.2d 249 (Fla.1995).
Section 768.31 does not define the phrase “entire liability.” Nor was that phrase defined in the Uniform Act on which section 768.31 was based. See Uniform Contribution Among Tortfeasors Act § 1 (1955). Indeed, the commentary on' the provision of the Uniform Act that was codified verbatim in section 768.31(2)(b) explains only that:
This provision is supported by several dozen decisions dealing with contribution in surety and other contract cases, and a court would almost certainly reach the result without the provision. It appears desirable to spell it out.
Uniform Contribution Among Tortfeasors Act § 1(b) cmt. at 6 (1955). Notwithstanding this commentary, our research did not locate a pre-Uniform Act decision that provides any insight as to the meaning of the phrase “entire liability.” Nor have we been able to locate a decision under the Uniform Act that expressly construes that phrase. But cf. City of Tucson v. Superior Court, 165 Ariz. 236, 798 P.2d 374, 379 (1990) (construing the phrase “common liability” in the Arizona version of section 768.31(2)(b) to mean “an amount representing the total damages caused by the negligence of all the defendants” and explaining “[t]his amount can be established either by verdict or through settlement”).
One purpose of section 768.31 was to encourage settlement and avoid lengthy litigation of claims. See Walker v. Virginia Ins. Reciprocal, 842 So.2d 804, 809 (Fla.2003). This purpose would be frustrated if a mini-damages trial were required to determine the “entire liability” in a contribution action arising out of a fully settled case when the contribution defendant is not challenging the reasonableness of the settlement. Accordingly, in these circumstances, consistent with the common understanding of the words “entire” and “liability,”[1] we conclude that the dollar amount paid to settle the underlying claim and to release the tortfeasors from any further liability for the claim represents the “entire liability” for purposes of section 768.31. Indeed, under the circumstances of this case, we fail to see how the potential value of the claim had the case gone to trial is relevant because the *523 amount of the settlement reflects the actual value of the claim to Wilkinson, FBOR, and UMC, by virtue of their agreement to settle the case for that amount.
This is not to say that the potential value of the underlying claim is irrelevant in every contribution action. Indeed, the contribution statute provides that a contribution plaintiff “is not entitled to recover contribution ... in respect to any amount paid in a settlement which is in excess of what was reasonable.” § 768.31(2)(d), Fla. Stat. (emphasis added); see also Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165, 169 (Fla. 1st DCA 1983) (“If the defendant is successful in showing the amount paid in settlement was unreasonable or excessive, his liability for contribution will be reduced to a pro rata share of that amount which would in the jury’s mind be determined reasonable.”). Thus, if the contribution defendant contends that the settlement was excessive, it is appropriate to consider the potential value of the claim, and other factors, in determining the reasonableness of the settlement. See id. at 168-69. However, where, as here, the contribution defendant has not challenged the reasonableness of the settlement, the potential value of the claim had the case gone to trial is irrelevant to the determination of the amount owed by the contribution defendant. See Ogle v. Craig Taylor Equip. Co., 761 P.2d 722, 726 (Alaska 1988); but cf. Pike Industries, Inc. v. Hiltz Constr., Inc., 143 N.H. 1, 718 A.2d 236, 239-40 (1988) (construing the term “obligation” in New Hampshire’s contribution statute and affirming finding that the obligation subject to apportionment in that case was $250,000, rather than the $175,000 settlement because the reduced settlement amount took into account the 30% of the fault attributable to the original plaintiff).
Accordingly, in this case, the trial court erred in determining that the “entire liability” for the underlying malpractice claim was $15 million rather than $6.15 million. The effect of this error was that Appellant was ordered to pay more than its pro rata share of the entire liability, which is 25.5% of the $6.15 million, or $1,568,250.[2] See § 768.31(2)(b), Fla. Stat. (1997) (“No tort-feasor shall be compelled to make contribution beyond her or his pro rata share of the entire liability.”). The trial court made no findings to suggest that the higher pro rata share reflected in the corrected judgment — $3,825,000, which equates to 62.2% of the $6.15 million settlement — was based on equitable considerations,[3] and thus, we reject UMC’s contention that the judgment can be affirmed on this alternative basis.
*524 In sum, for the reasons stated above, we reverse the corrected judgment and remand for entry of an amended judgment against Appellant for $1,568,250, plus prejudgment interest on this amount, which Appellant properly concedes it owes based on law of the case.
REVERSED and REMANDED with instructions.
BENTON, C.J. and RAY, J., concur.

. See, e.g., www.dictionary.com (defining “entire” to mean "having all the parts or elements; whole; complete” and defining "liability” to mean "money[] owed; debt[] or pecuniary obligation!]]”); Webster’s Seventh New Collegiate Dictionary (1965) at 277 (defining “entire” to mean "1: having no element or part left out 2: complete in degree: TOTAL”) and 486 (defining "liability” to mean "2: something for which one is liable; esp, pi: pecuniary obligations: DEBTS”).

. This is also the maximum amount UMC could recover from Appellant on its equitable subrogation claim under the circumstances of this case. Indeed, UMC properly conceded below based on the law of the case implicit in the reversal of the initial judgment that the equitable subrogation claim is subject to the same apportionment analysis as the contribution claim.

. See, e.g., § 768.31(3)(c), Fla. Stat.; F.H.W & C., Inc. v. Am. Hosp. of Miami, Inc., 575 So.2d 1300, 1304 (Fla. 3d DCA 1991) (noting that “the initial determination of pro rata shares is based on relative degrees of fault, but is still subject to variance by virtue of the equitable principles of Paragraphs 3(b) and 3(c)’’ of section 768.31); and cf. Restatement (Second) of Torts, § 886A, cmt. c. (1979) (discussing language nearly identical to section 768.31(2)(b) and noting that, based on the equitable nature of contribution, "when there are three tortfeasors and one of them is clearly insolvent or beyond the jurisdiction, the amount of contribution fairly allowable between the other two may reasonably be affected and the court may be expected to do what is fair and equitable under the circumstances’’).