NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1534-21

FAYE HOELZ,

      Plaintiff,

v.

ANDREA LEGATH BOWERS,
M.D., FAAOS, and/or
BURLINGTON COUNTY
ORTHOPAEDIC SPECIALISTS,
PA,

      Defendants/Third-Party
      Plaintiffs-Respondents,

v.

LUTHERAN CROSSINGS
ENHANCED LIVING,

      Third-Party Defendant,

and

WALTER COMINSKY, D.O.,

      Third-Party Defendant-
      Appellant.
_____

| APPROVED FOR PUBLICATION |
| :---: |
| **June 20, 2022** |
| **APPELLATE DIVISION** |

Argued March 21, 2022 – Decided June 20, 2022

Before Judges Messano, Rose, and Enright.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0620-16.

Mark A. Petraske argued the cause for appellant (Dughi, Hewit & Domalewski, attorneys; Mark A. Petraske, of counsel and on the briefs; Ryan A. Notarangelo, on the briefs).

Michael A. Pattanite, Jr., argued the cause for respondents (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys; Michael A. Pattanite, Jr., on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Prior to the 1952 enactment of the Joint Tortfeasors Contribution Law (the JTCL), N.J.S.A. 2A:53A-1 to -5, the common law of New Jersey "permitted a plaintiff to place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants." Tino v. Stout, 49 N.J. 289, 298 n.3 (1967); see also Town of Kearny v. Brandt, 214 N.J. 76, 97 (2013) (noting the JTCL "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim" (quoting Holloway v. State, 125 N.J. 386, 400–01 (1991))). "Once enacted, the JTCL apportioned any damage award on a pro rata basis among adjudicated tortfeasors." Glassman v. Friedel, 465 N.J. Super. 436, 446–47 (App. Div.

2

2020) (citing Blazovic v. Andrich, 124 N.J. 90, 103 (1991)), aff'd as mod., 249 N.J. 199 (2021).

The JTCL gave tortfeasors the right of contribution from fellow joint tortfeasors. N.J.S.A. 2A:53A-2. Under the JTCL, "if one of several joint tortfeasors paid the injured person more than his or her pro rata share of a judgment, that tortfeasor would be entitled to recover the excess from the remaining tortfeasors." Young v. Latta, 123 N.J. 584, 589 (1991) (citing N.J.S.A. 2A:53A-3); see also Glassman, 249 N.J. at 217 ("[A] defendant who paid the injured person more than that defendant's pro rata share of a judgment — the total judgment divided by the total number of defendants — was 'entitled to recover the excess from the remaining tortfeasors.'" (quoting Young, 123 N.J. at 589)).

"[T]he right of contribution is purely statutory," New Milford Bd. of Educ. v. Juliano, 219 N.J. Super. 182, 185 (App. Div. 1987), and that right is implemented by N.J.S.A. 2A:53A-3 (Section 3), which provides:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid

> over his pro rata share; but no person shall be entitled to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.
>
> [Ibid. (emphasis added).]

By its express terms, the JTCL contemplates a joint tortfeasor may recover contribution from another joint tortfeasor only if (1) there was a "money judgment" in favor of the plaintiff, and (2) the initial tortfeasor paid more than his "pro rata share" of that judgment. Ibid.

In this appeal, we consider again whether a settling tortfeasor may pursue a contribution claim against an alleged joint tortfeasor if the settlement with the plaintiff was never reduced to judgment.

I.

On March 28, 2014, while a patient at Virtua Health/Memorial Hospital of Burlington County (Virtua), plaintiff Faye Hoelz was diagnosed with a right ankle fracture and a left "lateral malleolus fracture." Defendant third-party plaintiff Dr. Andrea Bowers, an orthopedic physician employed by Burlington County Orthopedic Specialists, PA (BCOS), ordered short leg casts be placed on both of Hoelz's ankles. Days later, Hoelz was discharged from Virtua and admitted to a rehabilitation facility, third-party defendant Lutheran Crossings Enhanced Living (LCEL), where Bowers continued to treat her.

Third-party defendant Dr. Walter Comiskey, an internist, also treated Hoelz while she was at LCEL, where she remained until May 7, 2014, when she was re-admitted to Virtua suffering from bilateral gangrenous foot wounds. As a result of those wounds, Hoelz ultimately suffered a "significant amputation of the left leg" and underwent "surgery to her right foot for anatomical correction."

On March 16, 2016, Hoelz filed a complaint against Bowers, BCOS and fictitious defendants alleging medical negligence; Bowers and BCOS (collectively, Bowers) filed a third-party complaint against Comiskey, LCEL and fictitious third-party defendants alleging their negligence was "a cause" of Hoelz's injuries, pain, and suffering. Bowers demanded contribution and indemnification from Comiskey and LCEL.

Hoelz never amended her complaint to include Comiskey or LCEL as defendants, nor did she ever file a direct claim against either.[1] Discovery ensued, and the case was first listed for trial on April 22, 2019, but it did not proceed on that date.

---

[1] Hoelz's decision not to sue LCEL or Comiskey is of no moment. See Mejia v. Quest Diagnostics, Inc., 241 N.J. 360, 372–74 (2020).

In December 2019, the executor of Hoelz's estate reached a settlement with Bowers.[2] The estate received $600,000 and executed a release "giv[ing] up any and all rights and claims" it had against Bowers, BCOS, and their insurer. The release contained a non-disclosure provision prohibiting the estate from disclosing its terms. Pursuant to a stipulation of dismissal with prejudice filed December 16, 2019, the estate dismissed the complaint against Bowers.

Trial in the third-party action was scheduled for March 16, 2020, but it was adjourned several times due to the COVID-19 pandemic and for other reasons. In June 2021, Bowers reached a settlement with LCEL, the terms of which are not disclosed in the record. Trial on the third-party complaint against Comiskey was scheduled for September 13, 2021.

Both parties filed in limine motions, which were scheduled to be heard on the trial date. But, as counsel for Comiskey later certified, in "prepar[ing] for the impending trial date," he realized the "lack of an entered judgment as a requirement for [Bowers] to state a claim was . . . an issue" under the JTCL. On September 9, 2021, Comiskey filed another motion in limine seeking to dismiss the third-party complaint for failure to state a claim, asserting that pursuant to Section 3, only payment of a judgment, not payment pursuant to a

---

[2] Hoelz passed away on a date not revealed by the record.

6

settlement agreement, gives rise to a claim for contribution from a joint tortfeasor.

The trial date was again adjourned for medical reasons, allowing counsel to withdraw Comiskey's motion in limine and refile the motion as a formal motion to dismiss under Rule 4:6-2(e). By the time Bowers filed opposition, the court had set a trial date of January 24, 2022.

Although there are some disputed facts in the certifications filed by counsel, it is undisputed that Bowers settled the case without direct judicial involvement and without express notice to Comiskey, although Comiskey's counsel was "aware of the attempts and anticipation of the resolution of the first party complaint," "participated in conferences with the [c]ourt where the resolution was discussed before the first party complaint resolved," and subsequently became aware of the settlement and its amount. The judge handling the case at the time clearly indicated at conferences, without objection from Comiskey's counsel, that the third-party complaint would proceed after any settlement if one was reached.

On January 5, 2022, a different judge heard oral argument on Comiskey's motion to dismiss and immediately thereafter rendered an oral opinion denying the motion. After we granted Comiskey's motion for leave to

appeal, the judge filed a written amplification of reasons for denying the motion to dismiss pursuant to Rule 2:5-1(b).

The judge reasoned Comiskey's motion should be treated as one seeking summary judgment because it relied on matters outside the pleadings. He determined the motion violated Rule 4:46-1, which requires motions for summary judgment be "returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown." Relying on Cho v. Trinitas Regional Medical Center, 443 N.J. Super. 461, 475 (App. Div. 2015), the judge held that "absent extraordinary circumstances or the opposing party's consent, the consideration of an untimely summary judgment motion at trial and resulting dismissal of a complaint deprives a plaintiff of due process of law."

Although trial was scheduled for January 24, 2022, more than thirty days after Comiskey filed his motion to dismiss, the judge held this time frame was not dispositive, because it was the "eighth trial date scheduled." The judge concluded Comiskey failed to demonstrate good cause for failing to bring the motion immediately after Hoelz and Bowers reached their settlement in December 2019.

The judge also held that Section 3, requiring payment of a "judgment" before a joint tortfeasor was entitled to contribution from another joint

tortfeasor, "was for purposes of notice." He reasoned not only did Comiskey have notice of the settlement terms, but the medical malpractice reporting requirements of N.J.A.C. 11:1-7.3 "provide[d] more public information than any requirement of [a] docketed consent judgment." The judge determined a "docketed judgment" is not "necessary under the facts of this case," as "disclosure to the public made available under the Medical Malpractice Reporting Requirements of the [A]dministrative [C]ode satisfies [Section 3]."

Comiskey argues the judge erred in denying his motion to dismiss because, in the absence of a judgment in favor of plaintiff, the JTCL expressly precludes Bowers from seeking contribution for payments she voluntarily agreed to make under the settlement agreement. Comiskey also contends it was error to deny his motion as untimely under Rule 4:46-1, because he complied with the Rule as there was no trial date scheduled when he filed the motion, which was more than thirty days before the eventually scheduled trial date of January 24, 2022. Accordingly, Bowers had sufficient time to respond, and consideration of the motion's merits did not violate Bowers' due process rights.

Bowers counters that because Comiskey was aware of the settlement negotiations, and regulations require a medical malpractice settlement be publicly disclosed, her settlement with Hoelz was effectively a judgment

within the meaning of the JTCL. As to the procedural reason for denying Comiskey's motion, Bowers contends the "scheduled trial date" referred to in Rule 4:46-1, means the first scheduled trial date, which was March 16, 2020. According to Bowers, any summary judgment motion filed after February 16, 2020, was subject to the "good cause" requirement of Rule 4:46-1, and Comiskey failed to demonstrate good cause. Bowers asserts to hold otherwise "is an invitation for litigation gamesmanship," permitting parties to file a new motion for summary judgment every time a trial date is rescheduled. Finally, Bowers argues principles of equitable estoppel and fundamental fairness preclude Comiskey from waiting twenty-one months after the settlement and filing of the stipulation of dismissal to assert Bowers had not satisfied the "money judgment" requirement of Section 3.

We have considered the arguments in light of the record and applicable legal principles. We reverse and remand for entry of an order dismissing Bowers' third-party complaint for contribution.

## II.

Before turning to the merits of Comiskey's motion, we address the judge's corollary reason for denial — the motion was an untimely summary judgment motion that denied Bowers procedural due process. We agree with Comiskey that the judge erred.

10

Rule 4:46-1 requires that "[a]ll motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown." Here, the record demonstrates that Comiskey's formal motion to dismiss, filed on October 8, 2021, complied with this timeframe because at the time it was filed, no trial date had been set.[3] Bowers contends, however, the "scheduled trial date" referenced in Rule 4:46-1 is the first scheduled trial date, which was March 16, 2020. According to Bowers, any summary judgment motions filed after February 16, 2020, were therefore subject to the "good cause" and court order requirements of Rule 4:46-1.

Bowers cites no precedent to support her interpretation of the Rule. "We apply the same canons of construction to a court rule that we apply to a statute." Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 263 (App. Div.) (citing Mortg. Grader, Inc. v. Ward & Olivo, LLP, 438 N.J. Super. 202, 210 (App. Div. 2014), aff'd 225 N.J. 423 (2016), certif. denied, 249 N.J. 338 (2021)). The Rule does not make the "first" trial date the trigger limiting the filing of a summary judgment motion unless the court enters an order finding

---

[3] Bowers places significant emphasis on her claim that Comiskey filed his initial motion to dismiss on September 9, 2021, only "[a]fter the court decided all motions in limine." However, there is no support for this claim in the public record of proceedings in the Law Division. More importantly, that initial motion was withdrawn.

good cause, as Bowers claims. The Rule could have easily contained such a limitation, but it does not. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:46-1 (2022) ("The rule requires . . . that unless the court otherwise orders, the motion must be made returnable no later than [thirty] days before trial." (emphasis added)).

Under Bowers' interpretation, accepted by the motion judge, a movant must demonstrate good cause to the court's satisfaction before filing a summary judgment motion once the first trial date is adjourned, regardless of the reasons for the adjournment. Bowers concedes much of the delay in this case was due to the COVID-19 pandemic, and she makes no argument that Comiskey intentionally delayed in order to gain any litigation advantage.

Moreover, the judge's adjournment of the trial date and extension of time for Bowers to respond to Comiskey's motion eliminated any of the due process concerns identified in Cho, a case so factually dissimilar from this one that it has virtually no applicability. Here, Bowers plainly had the "opportunity to be heard at a meaningful time and in a meaningful manner." Cho, 443 N.J. Super. at 472–73 (quoting Doe. v Poritz, 142 N.J. 1, 106 (1995)). In short, the judge erred in denying Comiskey's motion on procedural grounds under Rule 4:46-1.

Bowers asserted before the motion judge that principles of equitable estoppel and fundamental fairness precluded Comiskey from waiting twenty-

one months after entry of the stipulation of dismissal to assert it did not satisfy the "money judgment" requirement of Section 3. The judge did not specifically address the argument, although in his oral opinion, the judge stated Bowers' contribution claim should "move forward" as a "matter of fundamental fairness," because the court "cannot look to . . . frustrate settlements" or "foster parties to settle agreements if . . . doing so would . . . extinguish . . . the contribution claim." We conclude that Bowers has not satisfied her burden to demonstrate either equitable estoppel or fundamental fairness should apply to preclude dismissal of her claim for contribution.

The Supreme Court has defined equitable estoppel as

> the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.
>
> [W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 553 (1989) (quoting Carlsen v. Masters, Mates & Pilots Pension Plan Tr., 80 N.J. 334, 339 (1979)).]

"The requirements of equitable estoppel are quite exacting." Ibid.

"The burden of proof of a claim based on principles of equitable estoppel is clearly on the party asserting estoppel." Miller v. Miller, 97 N.J. 154, 163 (1984) (citing Va. Constr. Corp. v. Fairman, 39 N.J. 61, 72 (1962)).

"[E]quitable estoppel is applied only in very compelling circumstances . . . 'where the interests of justice, morality and common fairness clearly dictate that course.'" Davin, LLC v. Daham, 329 N.J. Super. 54, 67 (App. Div. 2000) (quoting Palatine I v. Plan. Bd. of Montville, 133 N.J. 546, 560 (1993)).

Bowers does not assert Comiskey's delay in filing the motion to dismiss was intended to, or did, lull her into inaction, or that "it was both natural and probable" that Comiskey's delay would induce such lack of action. Miller, 97 N.J. at 163. Nor has Bowers sufficiently demonstrated how Comiskey's delay led her to "change [her] position for the worse." Pangborne, 116 N.J. at 553 (quoting Carlsen, 80 N.J. at 339).

Although Bowers now claims she is "precluded" from converting the stipulation of settlement into a consent judgment because she paid the settlement, Bowers provides no evidence when that occurred in relation to Comiskey's counsel gaining knowledge of the settlement. More importantly, counsel for Bowers obviously could have examined the relevant caselaw and moved to file a consent judgment as did counsel in Young v. Steinberg, 53 N.J. 252 (1969), and Gangemi v. National Health Laboratories, Inc., 305 N.J. Super. 97 (1997), both of which we discuss below. Since Bowers failed to demonstrate she "changed" her position to her detriment as a result of Comiskey's albeit lengthy inaction, the doctrine of equitable estoppel does not

apply, and there is no fundamental unfairness in considering whether the voluntary settlement she alone made with plaintiff should permit her to prosecute a claim for contribution under the JTCL.

III.

Although there may be factual disputes between Bowers and Comiskey regarding liability for Hoelz's injuries and damages, Comiskey's motion presented only questions of law, which we consider de novo. See, e.g., Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (noting "when no issue of fact exists, and only a question of law remains," the appellate court "affords no special deference to the legal determinations of the trial court" (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995))). In the first instance, the issue is one of statutory interpretation, because the JTCL's right of contribution among joint tortfeasors is predicated on the plaintiff's "recover[y of] a money judgment" against the tortfeasor seeking contribution. N.J.S.A. 2A:53A-3.

"When we interpret a statute, we strive to effectuate the Legislature's intent." Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (citing Cashin v. Bello, 223 N.J. 328, 335 (2015); DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "[T]he best indicator of that intent is the statutory language," which should be given its "ordinary meaning and significance." DiProspero,

15

183 N.J. at 492 (first citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)); then citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). "We construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)). "If the plain language leads to a clear and unambiguous result, then [the] interpretative process is over." Finkelman, 236 N.J. at 289 (alteration in original) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

The Court's interpretation of the plain and unambiguous language of Section 3 began shortly after enactment of the JTCL. In Pennsylvania Greyhound Lines, Inc. v. Rosenthal, the plaintiff in the underlying lawsuit recovered a judgment against the operator of the vehicle in which she was a passenger (Rosenthal), and the bus company and operator of the bus (Greyhound) involved in an accident with Rosenthal. 14 N.J. 372, 379 (1954). While Greyhound's appeal was pending, the Legislature enacted the JTCL. Ibid. Greyhound paid the full judgment and then filed suit seeking pro rata contribution from Rosenthal under the JTCL. Ibid. The trial court granted summary judgment to Greyhound, and Rosenthal appealed, arguing in part that

the JTCL did not apply to a judgment entered prior to the statute's effective date; the Court took direct certification of the appeal.  Id. at 380.

Resolving whether the JTCL applied, the Court held:

> The statutory right of action for contribution accrues only on the payment by a joint tortfeasor of a money judgment recovered against him for the injurious consequences of the wrong; and by clear and imperative terms the right is enforceable as to payments made on the underlying judgment after the law came into being, even though the judgment was entered before.
>
> [Id. at 382 (emphasis added).][4]

The Court also noted that, "[u]nlike the draft act submitted by the Commissioners on Uniform State Laws, 9 U.L.A. 156, [the JTCL] does not provide for contribution where the payment is made in fulfillment of a voluntary compromise or settlement of a claim for damages attributed to a joint tortfeasor."  Id. at 383; see also Milton A. Dauber, New Jersey Joint Tortfeasors Contribution Law, 7 Rutgers L. Rev. 380, 381 (1953) (noting the

---

[4] N.J.S.A. 2A:53A-4 provides:

> This act shall apply to all actions for contribution commenced, and to all judgments recovered, after the effective date hereof irrespective of the time of the commission of the wrongful act or acts by the joint tortfeasors; provided, that it shall not apply with respect to payments made prior to the effective date hereof.

difference between the JTCL and the 1939 Uniform Contribution Among Joint Tortfeasors Act (the 1939 Uniform Law)).[5] The "operative act," triggering the right to sue for contribution, "is the payment of more than <u>the judgment debtor's</u> pro rata share of the tort liability <u>established by the judgment</u>." <u>Rosenthal</u>, 14 N.J. at 383 (emphases added).

Several cases have since addressed the statute and its application in situations where the plaintiff reaches a settlement with an alleged joint tortfeasor and voluntarily dismisses the complaint. In <u>Young v. Steinberg</u>, the plaintiff was a passenger in a car driven by her sister, the co-defendant Magle, which collided with a vehicle driven by the defendant Steinberg allegedly in the course of his employment. 100 N.J. Super. 507, 509 (App. Div. 1968), <u>rev'd on dissent</u>, 53 N.J. 252 (1969). The plaintiff settled her claims, with

---

[5] Under the 1939 Uniform Law, a "joint tortfeasor who enters into a settlement with the injured person" could "recover contribution from another joint tortfeasor" only if the second tortfeasor's "liability to the injured person" was also "extinguished by the settlement." <u>Unif. Contribution Among Tortfeasors Act</u> (1939), § 2(3), 12 U.L.A. 193 (2008).

The 1939 Uniform Law was amended in 1955. <u>See</u> <u>Unif. Contribution Among Tortfeasors Act</u> (1955) (1955 UCATA), 12 U.L.A. 201 (2008). Although it still permitted a settling tortfeasor to pursue a contribution-only claim against another joint tortfeasor if the settlement extinguished the non-settling tortfeasors liability, under the 1955 UCATA, the settling tortfeasor was "not entitled to recover contribution . . . in respect to any amount paid in a settlement which is in excess of what was reasonable." <u>Id.</u> at § 1(d), 12 U.L.A. 202 (2008).

Steinberg paying the full settlement of $50,000 because Magle refused to contribute; the plaintiff dismissed her complaint as to all defendants, and executed a release in favor of Steinberg that preserved Steinberg's crossclaim against Magle for contribution. Young, 100 N.J. Super. at 509.

When Magle moved to dismiss the crossclaim, Steinberg sought a brief adjournment and filed a consent judgment in favor of the plaintiff for the settlement amount; the judgment discharged any further liability of all the defendants. Id. at 510. The court reserved decision on Magle's motion to dismiss and submitted the issue of whether Magle and Steinberg were joint tortfeasors to a jury, which concluded they were. Ibid. Magle again moved to dismiss, and the trial judge granted her motion dismissing Steinberg's crossclaim for contribution. Ibid.

On appeal, we said:

> [T]he issue is whether a consent judgment against a paying tortfeasor, entered into as the result of a settlement between plaintiff and such tortfeasor, which judgment discharges the liability of another tortfeasor, satisfies the statutory requirements of the recovery of a money judgment under [S]ection 3, . . . and entitles the settling tortfeasor to recover contribution from the other tortfeasor.
>
> [Id. at 511–12.]

We again noted the Legislature's decision when enacting the JTCL to deviate from the 1939 Uniform Law when it "omitted any reference to a right of

A-1534-21

contribution based on a settlement." Id. at 512. We said, "The legislative intent would appear to encompass only a judgment entered in a true adversary proceeding." Id. at 513 (emphasis added). We also rejected Steinberg's assertion that at a contribution-only trial,

> the jury could decide not only the issue of joint liability, but also . . . the reasonableness of the amount of the settlement. There are too many practical difficulties involved to make this feasible. This would appear to be the reason why the Legislature excluded settlements from the scope of the act.
>
> [Id. at 514 (emphasis added).]

Judge Foley dissented, concluding that, under the circumstances presented, a consent judgment met the requirements of Section 3. He wrote:

> Having in mind the mischief the Legislature sought to remedy, I can see no valid reason for, in effect, reading into the law a legislative intention that the recovery of a money judgment entered by consent and resulting from a settlement, could not be made the basis of an action for contribution where, as here, there was a jury finding that the parties before us were joint tortfeasors and the noncontributing tortfeasor has the opportunity to contest the reasonableness of the amount of the judgment.
>
> [Id. at 515.]

In Judge Foley's view, the matter should have been remanded because Magle did not have the opportunity to contest the reasonableness of the settlement amount, and, if the settlement amount was not reasonable, Magle should only

be required to pay her pro rata share "of what is determined to be reasonable compensation for the plaintiff's injuries." Ibid.

The Court reversed our judgment on the strength of Judge Foley's dissent, finding "no reason to constrict the meaning of the term 'money judgment' in [the JTCL] so as to exclude consent judgments." Young, 53 N.J. at 254–55 (quoting N.J.S.A. 2A:53A-3). The Court noted "contribution is to be encouraged, as it is grounded in principles of fairness and equitable distribution of liability." Id. at 255 (citing Sattelberger v. Telep, 14 N.J. 353, 367–68 (1954)). It held that "[a] suit for contribution based on a settlement which has been elevated to the status of a judgment by formal court proceeding, and which discharges the injured party's claim against a non-settling joint tortfeasor, comports with the intent of our statutory scheme." Ibid. (emphasis added). The Court clarified that as would every contribution claimant, Steinberg had to "establish a common liability . . . and the quantum of the damages ensuing from the joint offense." Ibid. (quoting Sattelberger, 14 N.J. at 367).

Since Young was decided, no reported decision has extended its reasoning to elevate a settlement and corollary stipulation of dismissal to the status of a "money judgment" for purposes of contribution under the JTCL. In Polidori v. Kordys, Puzio & Di Tomasso, AIA, tenants sued their contractor-

landlord (Polidori) when one slipped and fell after a pipe burst in the basement of the home Polidori constructed. 217 N.J. Super. 424, 427 (App. Div. 1987). After settling the case with the plaintiff, Polidori filed suit against the architect and others seeking, among other things, contribution. Id. at 428. The trial judge dismissed those claims, concluding "Polidori failed to meet the 'judgment' requirement of N.J.S.A. 2A:53A-3 thereby precluding contribution." Ibid.

Writing for our court, future Justice Virginia A. Long noted that under the JTCL, the "right [of contribution] is only enforceable after the tortfeasor seeking it has been legally compelled to pay more than his equitable share of the liability. Until this point, the right remains inchoate." Id. at 429–30 (emphasis added). We reviewed the holdings in Rosenthal and Young, acknowledging the soundness of Polidori's argument that after Young, "there [wa]s no policy rationale for excluding contribution based on a settlement which has been memorialized in a stipulation of dismissal." Id. at 432. Nonetheless, we rejected the contention, "because we [we]re bound to enforce the statute as written. . . . By the terms of [the JTCL], a 'judgment' is required in order to trigger the right to contribution." Ibid.

In Gangemi, a case that bears some factual similarity to the one at hand, the plaintiff-executrix filed a medical malpractice claim against National

A-1534-21

Health Laboratories, Inc. (NHL) alleging it misread a Pap smear, forestalling treatment of her decedent's fatal cervical cancer. 305 N.J. Super. at 100–01. NHL impleaded a treating doctor, Dr. Garrett, as a third-party defendant. <u>Id.</u> at 101. After a settlement conference just before trial with all parties participating, the plaintiff settled her claims with NHL, which filed a stipulation of dismissal reserving its claims against the doctor. <u>Ibid.</u> Dr. Garrett moved for summary judgment on NHL's contribution claim, and NHL cross-moved to vacate the stipulation and enter a consent judgment in favor of the plaintiff. <u>Ibid.</u> The trial judge granted the doctor's motion and denied NHL's motion. <u>Id.</u> at 102.

On appeal, we reiterated "[t]he [JTCL] does not recognize a claim for contribution against a joint tortfeasor unless the plaintiff recovers an actual judgment. . . . <u>A simple stipulation of dismissal 'does not satisfy the "judgment" requirement of the act,' and the settling party may not seek contribution without a final consent judgment</u>." <u>Id.</u> at 103 (quoting <u>Polidori</u>, 217 N.J. Super. at 432) (emphasis added). We noted, "<u>Young</u> allows a suit for contribution only where both elements are satisfied: (1) a judgment is obtained by formal court proceeding and (2) the plaintiff[s'] claims against a non-settling joint tortfeasor are discharged." <u>Id.</u> at 105.

We distinguished the case at hand from Young as to the second point, because "[w]hether or not plaintiff sued Dr. Garrett directly, NHL could still seek contribution under the [JTCL], provided that a jury establishes [the doctor's] liability." Id. at 105–06 (citing Sattelberger, 14 N.J. at 367–68). We found no prejudice to the doctor, who conducted discovery and had been participating at trial and in the settlement conferences. Id. at 107. However, we concluded there were factual disputes surrounding NHL's bona fides in initially agreeing to a stipulation of dismissal, perhaps to foreclose adverse publicity attending a consent judgment, or whether, as NHL claimed, it only failed to enter into a consent judgment because of its counsel's inadvertence. Ibid. We remanded the matter to the trial court to resolve the issue. Id. at 108.

More recently, in Cherilus v. Federal Express, we again relied on Polidori and Young to reject a claim that a settlement by release and stipulation of dismissal could constitute a "money judgment" under the JTCL. 435 N.J. Super. 172, 179–81 (App. Div. 2014). There, the plaintiff was injured on a cargo lift at a Federal Express facility. Id. at 175. He sued the company which maintained the lift, LFS, and LFS filed a third-party complaint against the lift's manufacturer, American Lifts. Ibid. The plaintiff later amended his complaint to add American Lifts as a direct defendant, but the trial court granted summary judgment to American Lifts on the plaintiff's

A-1534-21

claims and LFS's contribution claim based on the statute of repose, N.J.S.A. 2A:14-1.1(a). Id. at 176–77. Thereafter, LFS and the plaintiff settled the first-party action and filed a stipulation of dismissal. Id. at 177. The plaintiff executed a release in favor of LFS and assigned his claims against American Lifts to LFS. Id. at 177–78.

LFS appealed the grant of summary judgment to American Lifts, and we affirmed dismissal of LFS's contribution claim, declining "to expand [Section 3] to apply as well to a stipulation of dismissal." Id. at 180 (citing Polidori, 217 N.J. Super. at 432). We additionally rejected a request to convert the stipulation of dismissal "into a consent judgment . . . in the interests of justice," noting American Lifts had not participated in the settlement conference and had no further involvement in the proceedings after obtaining summary judgment. Ibid.

We observed "[t]he statutory requirement of a judgment is not against the interests of justice and should not discourage settlements," because a defendant could "proceed to trial on the plaintiff's personal injury claims and receive a credit under the Comparative Negligence Act, N.J.S.A. 2A:15-5.2, for any proportion of responsibility for the injuries that the jury attributes to another tortfeasor, even if the other tortfeasor was earlier dismissed from the case." Id. at 180–81 (citing Brandt, 214 N.J. at 98–104). Nor must a

25

defendant who voluntarily settles the case with the plaintiff pay damages attributable to another joint tortfeasor's liability. Id. at 181. Moreover, even if the defendant pays more than its comparative share of damages, "it can preserve its claim for contribution from a potentially liable joint tortfeasor through appropriate judicial proceedings and a judgment order." Ibid. LFS did none of these things, and we therefore found it had "no viable claim of contribution under N.J.S.A. 2A:53A-3 for its voluntary payment of settlement money to plaintiffs to obtain the stipulation of dismissal." Ibid.

Bowers does not dispute the essential holdings of these cases. Instead, she cherry-picks dicta from some of them to fashion an argument why her settlement with Hoelz's estate satisfies Section 3's requirement of a money judgment as a necessary predicate for a contribution claim. For example, she seizes on dicta in Gangemi criticizing the trial judge for concluding without a hearing that NHL's decision to file a stipulation of dismissal, rather than enter into a consent judgment, was to avoid "public disclosure which could impact on NHL's image," and not because of counsel's inadvertence. 305 N.J. Super. at 107. Bowers argues her voluntary settlement of the case will not spare her from public scrutiny because of applicable regulations.

N.J.A.C. 11:1-7.3(a)(1) requires medical malpractice insurers, or the medical practitioner if uninsured, to notify the "Medical Practitioner Review

26

Panel"[6] of the terms, including the amount, of "[a]ny medical malpractice claim settlement, judgment or arbitration award involving any practitioner licensed by the State Board of Medical Examiners." The DCA makes such information publicly available and searchable through a website. Bowers included with her opposition to Comiskey's motion to dismiss and now on appeal, a printout of her profile on this website, listing the December 2019 medical malpractice settlement in the amount of $600,000.

The motion judge seemingly accepted Bowers' argument that Section 3's requirement of a money judgment was motivated, in part, by the fact that a docketed money judgment provides public notice of the contribution claimant's liability. However, neither the motion judge nor Bowers cites any New Jersey opinion that even tangentially refers to "public notice" of the tortfeasor's liability as a factor animating Section 3's requirement of a money judgment.

Bowers seeks to distinguish Cherilus, where we noted the absence of the third-party defendant's involvement in the litigation and settlement discussions

_____

[6] The Medical Practitioner Review Panel is a nine-member panel established under the State Board of Medical Examiners. N.J.S.A. 45:9-19.8(a). Eight members are appointed by the Governor with the advice and consent of the Senate, and one ex officio member is appointed by the President of the State Board of Medical Examiners. Ibid. The Division of Consumer Affairs (DCA) in the Department of Law and Public Safety "provide[s] such investigative, medical consulting and clerical support as is necessary to carry out the duties of the review panel." N.J.S.A. 45:9-19.8(b).

after prevailing on summary judgment as distinguishing the case from Gangemi, by arguing Comiskey was well aware of ongoing settlement discussions and fully anticipated the possibility of trial on the third‑party contribution claim. But this contention misses the mark, because neither the plaintiff nor the defendant need name a potential joint tortfeasor as a party in the underlying suit to preserve a contribution claim. See Holloway, 125 N.J. at 402 ("How joint tortfeasors arrive at the litigation should not affect the substantive right of contribution." (citing Sattelberger, 14 N.J. at 369–72)). Moreover, neither Gangemi nor Cherilus strayed from Young's essential holding — a contribution claim under the JTCL must be predicated on a money judgment in the plaintiff's favor against the contribution claimant.

With the creation of a statutory right of contribution non‑existent in New Jersey at common law, the JTCL from its inception was "grounded in principles of fairness and equitable distribution of liability." Young, 53 N.J. at 255 (citing Sattelberger, 14 N.J. at 367–68); see also Rosenthal, 14 N.J. at 387 ("The inequality emanating from the payment [of a judgment] is the thing redressed."); Polidori, 217 N.J. Super. at 429 ("The allowance of contribution is founded upon principles of equity to insure a fair and just division of losses between responsible tortfeasors."). Those principles supplied the foundation

28

supporting the JTCL's enactment, not public notice nor the third-party contribution defendant's level of participation in the underlying suit.

Bowers also contends dismissal of her third-party contribution claim violates the strong public policy favoring settlements. She argues Comiskey should not be able to avoid potential liability for Hoelz's damages simply because she (Bowers) decided to settle plaintiff's claims. However, we firmly rejected that argument in Cherilus, where we explained "[t]he statutory requirement of a judgment is not against the interests of justice and should not discourage settlements." 435 N.J. Super. at 180. Bowers, for example, could have entered into a consent judgment with Hoelz, but she did not, nor did she seek to do so before the motion judge. Moreover, because Bowers alone agreed to the settlement amount, we reasonably assume it reflects only her portion of Hoelz's full damages, and not those attributable to another joint tortfeasor's liability. See id. at 181.

In short, the plain language of Section 3 predicates Bowers' ability to pursue her third-party contribution claim against Comiskey upon a judgment in Hoelz's favor. That statutory requirement has little to do with the public notice provided by a judgment, but rather everything to do with the natural consequences that flow from the entry of a judgment against the settling tortfeasor "blessed with the imprimatur of the court." Polidori, 217 N.J. Super.

at 430.  Moreover, as a court of intermediate appellate jurisdiction, we are bound by the Court's holdings in Rosenthal and Young, both of which require the court's entry of a money judgment in the plaintiff's favor against the contribution claimant as predicate to a right of contribution.  We therefore reverse the order denying Comiskey's motion to dismiss and remand the matter to the Law Division to enter an order dismissing Bowers' third-party complaint for contribution.

IV.

We would be remiss not to raise concern over application of the holding in Young, 53 N.J. at 255 — a consent judgment in the plaintiff's favor is sufficient to support a claim for contribution under Section 3 — after the 1972 enactment of the Comparative Negligence Act (the CNA), N.J.S.A. 2A:15-5.1 to -5.8.  We need not reiterate the critical relationship between the JTCL and the CNA, which Justice Patterson so thoroughly explained in Glassman, 249 N.J. at 216–22.  It suffices to say the Court recognized that "[w]hen it enacted the [CNA], the Legislature fundamentally altered the method by which courts determine the impact of the plaintiff's settlement with one joint tortfeasor on the liability of the remaining non-settling tortfeasors."  Id. at 218 (emphasis added); see also Brandt, 214 N.J. at 97 ("[W]hen applied together, the [CNA and JTCL] implement New Jersey's approach to fair apportionment of damages

30

among plaintiffs and defendants, and among joint defendants." (emphasis added) (quoting Erny v. Est. of Merola, 171 N.J. 86, 99 (2002)).

While the "key reform" of the CNA was to "ameliorate[] the harsh consequences of the doctrine of contributory negligence," which precluded plaintiffs' recoveries if they were in any way at fault, the CNA also eliminated the simplistic pro rata apportionment of responsibility under the JTCL in favor of apportionment by the trier of fact of a specific percentage of fault to the plaintiff and each adjudicated tortfeasor. Glassman, 249 N.J. at 218–19; N.J.S.A. 2A:15-5.2(a)(2).

Under the CNA, the plaintiff may recover the "full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages." N.J.S.A. 2A:15-5.3(a). If a tortfeasor is "determined by the trier of fact to be less than 60% responsible for the total damages," only "that percentage of the damages directly attributable to that [tortfeasor]'s negligence or fault" may be recovered from that tortfeasor. N.J.S.A. 2A:15-5.3(c). Only a "party who is compelled to pay more than his percentage share may seek contribution from the other joint tortfeasors." N.J.S.A. 2A:15-5.3(e) (emphasis added).

We can easily envision how the JTCL and the CNA would have worked in tandem in this case had Bowers not settled with Hoelz's estate and instead

31

gone to trial. First, a jury would have determined "the full value of [Hoelz's] damages," before deciding "each party's negligence or fault," expressed in percentages totaling 100%. N.J.S.A. 2A:15-5.2(a)(1)-(2). Had the jury concluded both Bowers and Comiskey were at fault, but Bowers was more than 60% responsible, Hoelz's estate could have recovered all its damages from the only party it sued, i.e., Bowers. N.J.S.A. 2A:15-5.3(a). That would have triggered Bowers' right to contribution under the JTCL and her ability to recover from Comiskey his percentage of the damages, i.e., between 1% and 40% of the total award. N.J.S.A. 2A:15-5.3(e). If the jury had instead attributed less than 60% of the fault to Bowers, she would have been only responsible for her percentage share of the damages and thus would have no right to contribution from Comiskey. N.J.S.A. 2A:15-5.3(c).

Things become cloudier if, as Young permits, Bowers had reduced her settlement with Hoelz's estate to a consent judgment for $600,000, and proceeded against Comiskey on her third-party contribution-only claim. In Young, the Court envisioned that at such a trial, Bowers would bear the burden of "establish[ing] a common liability" with Comiskey, "and the quantum of damages ensuing from the joint offense." Young, 53 N.J. at 255 (quoting Sattelberger, 14 N.J. at 367). Because the JTCL only provided for pro rata sharing of the judgment, prior to enactment of the CNA, the comparative fault

32

of Bowers or Comiskey would be irrelevant. Thus, if Bowers had paid Hoelz's estate the entire $600,000 pursuant to a consent judgment, prior to enactment of the CNA, she would have been entitled to $300,000 in contribution from Comiskey if she proved he was a joint tortfeasor.[7]

After enactment of the CNA, permitting a contribution-only third-party suit to proceed based on a consent judgment as anticipated by Young presents immediate concerns. For example, accepting for the moment Bowers' contribution claim is limited in amount to the $600,000 settlement reduced to a consent judgment, and assuming a jury found both Bowers and Comiskey were equally at fault, then each presumably would be responsible for $300,000.

---

[7] Although Young suggests Bowers, as the contribution claimant, was also required to prove, and Comiskey was entitled to contest, "the quantum of damages ensuing from the joint offense," 53 N.J. at 255, we query what the Court envisioned would be Comiskey's contribution obligation if the jury determined Hoelz's damages were more or less than the $600,000 consent judgment, and both Bowers and Comiskey were at fault? Under Section 3, Bowers' contribution claim is limited to the "excess" she "paid over [her] pro rata share" of the "money judgment"; if both were at fault, would not Bowers' successful claim be limited to and always equal to one-half of the $600,000 judgment, regardless of the jury's decision regarding the quantum of damages?

Or did the Young Court envision that, contrary to Section 3's plain language, if the jury returned a verdict of less than $600,000, that amount would be the "money judgment" for purposes of Section 3, and Bowers would only receive contribution equal to one half of the jury award? What if the jury award of damages exceeded $600,000? We doubt the Court meant that Bowers could recover more than her pro rata share of the amount she voluntarily settled for with Hoelz, but these hypothetical outcomes were not addressed by the Court.

A-1534-21

N.J.S.A. 2A:15-5.3(e), however, states: "Any party <u>who is compelled to pay more than his percentage share</u> may seek contribution from the other joint tortfeasors." (Emphasis added). Because of the consent judgment, Bowers would be compelled to pay $600,000 to Hoelz's estate, but that compulsion was solely of her making, without Comiskey's agreement or consent. Nevertheless, we might assume Bowers would be entitled to recover $300,000 from Comiskey, the amount she was compelled to pay above her percentage share of liability.

Since Comiskey did not agree to the settlement, fairness and due process demand he be permitted to contest the amount of the judgment as well as the parties' comparative fault. <u>Young</u> certainly anticipated the "quantum of damages" was for the jury to decide. If a jury decided Hoelz's damages were only $200,000, and Bowers and Comiskey were equally responsible, each would be liable only for "that percentage of the damages directly attributable to that [tortfeasor's] negligence or fault," i.e., $100,000. N.J.S.A. 2A:15-5.3(c).

Because the consent judgment of $600,000 resulting from the settlement now "compelled [Bowers] to pay more than [her] percentage share," N.J.S.A. 2A:15-5.3(e), would she be entitled to contribution from Comiskey, and, if so, how much? Would it be limited to $100,000, the consequence of a bad

settlement?  Or would Bowers be entitled to $300,000, reflecting her equally shared responsibility with Comiskey?  The possibilities become more perplexing if a jury decided the "quantum of [Hoelz's] damages" exceeded $600,000.  As we already noted, see note 6, infra, the Court in Young did not address what should be the contribution claimant's award if she established joint liability, but the jury assessed the quantum of damages to be more or less than the amount of the consent judgment.

In concluding a consent judgment resulting from a settlement did not satisfy the money judgment requirement of Section 3, thereby entitling the settling tortfeasor to pursue a contribution-only suit, future Justice Mark A. Sullivan wrote for the majority in our decision in Young:  "There are too many practical difficulties involved to make this feasible.  This would appear to be the reason why the Legislature excluded settlements from the scope of the [JTCL]."  100 N.J. Super. at 514.  As more jurisdictions have adopted statutes, like the CNA, that reject contribution based on simple adjudication of pro rata liability and incorporate, instead, notions of comparative fault among joint tortfeasors, these "practical difficulties" become more apparent.

To date, all but five jurisdictions (Alabama, Maryland, North Carolina, Virginia, and the District of Columbia) have adopted some system of allocating comparative fault.  Unif. Apportionment of Tort Responsibility Act

A-1534-21

(UATRA), Pref. Note (amended 2003), 12 U.L.A. 8 n.3 (2008). The Uniform Laws Conference adopted the UATRA to replace the 1955 UCATA and the 1977 Uniform Comparative Fault Act, a precursor to our CNA.

Under the UATRA, settling tortfeasors, who are released from any further liability to the plaintiff, are precluded from seeking contribution from any non-settlor. Section 8(c) of the UATRA expressly provides that a "release, covenant not to sue, covenant not to execute a judgment, or similar agreement extinguishes a claim for contribution or indemnity that the released person would have had against another person that would have been jointly and severally liable with the released person." Id. at 27. In 2009, the Uniform Laws Conference officially declared the 1955 UCATA, which preserved the ability to pursue a contribution-only claim following settlement, "obsolete." Unif. Contribution Among Tortfeasors Act (1955) (withdrawn 2009), 12 U.L.A. 111 (Supp. 2021).

It is difficult to discern the extent to which our sister states have adopted § 8(c) of the UATRA, given variations in statutory provisions from state to state. We note, however, that in New York, a "tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." N.Y. Gen. Oblig. Law § 15-108(c) (McKinney 2022). In California, a right of contribution accrues only if there is a "money judgment . . . rendered

36

jointly against two or more defendants in a tort action." Cal. Civ. Proc. Code § 875(a) (West 2022) (emphasis added).[8]

In Florida, settling tortfeasors still have a right of contribution from non-settling tortfeasors under Fla. Stat. Ann. § 768.31 (West 2022), which tracks the settlement language of the 1955 UCATA. However, Florida adds a specific statutory definition of "pro rata shares" in accordance with comparative fault principles: "In determining the pro rata shares of tortfeasors in the entire liability: (a) Their relative degrees of fault shall be the basis for allocation of liability." Fla. Stat. Ann. § 768.31(3)(a) (West 2002).

In Healthcare Staffing Solutions, Inc. v. Wilkson, the Florida District Court of Appeals set the parameters for a trial on a joint tortfeasor contribution-only claim. 5 So. 3d 726 (Fla Dist. Ct. App. 2009), appeal after remand, 86 So. 3d 519 (Fla. Dist. Ct. App. 2012). The court held that the trier

---

[8] Arizona has legislatively abandoned the concept of joint and several liability for most tort cases. See Ariz. Rev. Stat. Ann. § 12-2506(A) (2022) (in actions for "personal injury, property damage or wrongful death," with limited exceptions not applicable here, "the liability of each defendant for damages is several only and is not joint"). In PAM Transport v. Freightliner Corp., the Arizona Supreme Court held that, notwithstanding statutory language that mirrored the 1955 UCATA and permitted settling tortfeasors to pursue contribution-only claims, the Arizona "legislature has eliminated the right of contribution where a settling defendant's liability is 'several only.'" 893 P.2d 1295, 1296 (Ariz. 1995) (quoting Ariz. Rev. Stat. Ann. § 12-2506(D)).

of fact must "apportion each tortfeasor's liability according to his or her relative degree of fault in causing the injury giving rise to the tort claim." Healthcare Staffing, 5 So. 3d at 730 (citing Fla. Stat. Ann. § 768.31(3)(a) (West 2002)). In the absence of a claim that the settlement was unreasonable, the "entire liability" to be apportioned under § 768.31 was not the "potential value" of the damages claimed prior to settlement, but rather the settlement amount itself. Healthcare Staffing, 86 So. 3d at 522–23. Only if "the contribution defendant contends that the settlement was excessive" would it be "appropriate to consider the potential value of the claim, and other factors, in determining the reasonableness of the settlement." Id. at 523.

We remain, of course, bound by the Court's decision in Young, which permits a settling tortfeasor to pursue a contribution-only claim against a non-settling purported joint tortfeasor if the settlement is reduced to a consent judgment. Our discussion here is only intended to highlight the varied and difficult considerations involved in permitting settling tortfeasors to seek contribution from non-settling tortfeasors under our statutory framework, particularly following the passage of the CNA after Young was decided.

Reversed and remanded for entry of an order dismissing Bowers' third-party complaint for contribution.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1534-21